Hull, J.
Charles Moerder, the plaintiff in error, was arrested and tried before the mayor of the city of Fremont on the charge of violating a certain ordinance of said city which prohibited hackmen from soliciting patronage on any railroad platform or ground used for railroad purposes. He was found guilty and sentenced (o pay a fine.
The motion for a new trial was overruled, and the case taken to the common pleas court on error, and the judgment of the mayor there affirmed.
The question made here is, that the ordinance under which Moerder was arrested and prosecuted and convicted, is unreasonable, in restraint of trade, and violates the common rights of men.
The ordinance reads as follows: “That it shall be unlawful for any person, within the limits of this city, as a runner for the benefit of himself or another, on any railroad platform or ground used for railroad purposes, or any railroad depot or building, to ask, solicit or engage any person to take passage in any omnibus, carriage or conveyance or to recommend any particular hotel, tavern or house of pubic entertainment, or to solicit or ask passengers to repair to any such hotel or public house named by such runner, and any person violating the provisions of this section, shall, upon conviction thereof, be fined in any sum not exceeding twenty dollars.”
The plaintiff in error was charged with violating this ordinance, in an affidavit which was filed before the mayor, *395 and which charged that Moerder “being then and there a hack driver and acting as a runner in the employ of and for the benefit of Bisnette and Bonnell, a certain livery and hack firm in the said city, did unlawfully on the platform and grounds owned and used for railroad purposes by the Lake Shore and Michigan Southern Railway Company, at their passenger depot within the limits of said city, ask and solicit certain passengers and'persons to take passage in the hack or conveyance so being driven and used by him for said Bisnette and Bonnell’’; and as I have said, upon this •charge he was found guilty.
It is claimed that this ordinance is unreasonable in that it prohibits a hackman from soliciting patronage for himself in and about a railroad depot, railroad platform of grounds. It is claimed that this is a right which the owner or driver of a hack has in plying his trade, and that to interfere with it in this manner is a restraint, and an unlawful restraint of his trade and occupation, and that the ordinance is unreasonable, and therefore invalid.
Under a section of the statutes of this state, villages and. cities are empowered to regulate the use of carts, drays, hackney coaches, etc. The section is 1692, and paragraph ten is the paragraph relating to this kind of occupation.
The section reads as follows:
“In addition to the powers specifically granted in this title, and subject to the exceptions and limitations in other parts of it, cities and villages shall have the general powers enumerated in this section, and the council may provide by ordinance,or the exercise and enforcement of the same.”
Paragraph 10 reads as follows:
“To regulate the use of carts, drays, wagons, hackney coaches, omnibuses and every description of carriages which may be kept for hire, or livery stables.”
In our judgment, under this section of the statutes and this paragraph, a municipality has the right and power to pass a proper ordinance to regulate the running and use of hacks and omnibuses, and that paragraph ten is the one under which this comes, and not paragraph one, or paragraph three as was suggested,
Having this power, the sole question made here is whether the power was exercised in a reasonable manner by the enactment of this ordinance.
*396 Whether an ordinance passed by a muunicipal corporation is reasonable or not is a proper subject for judicia consideration, and is a question addressed to the court; and if an ordinance is found by the court to be unreasonable, it will, for that reason, be found invalid.
I cite 46 American State Reports, page 390. The case is found in the 138 Indiana, page 339, and the third paragraph of the syllabus is:
. “The reasonableness of a municipal ordinance is a proper subject for judicial inquiry, if enacted under a general grant of authority not prescribing the manner of its exercise.”
Now it is claimed by counsel for plaintiff in error that this ordinance is unreasonable^ and should have been so found by the courts below, and should now be so found by this court. Quite a large number of cases are cited. One case that is especially relied upon by plainitff in error, is found in the 36th American Reports, page 24, an Arkansas case, Thomas v. The City of Hot Springs. The syllabus is: “A city ordinance prohibited drumming and soliciting patronage for hotels, boarding-houses, bath-houses, physicians, quacks and venders of nostrums. Held, void as to competent physicians; and so it seems as to hotels, boarding houses and bath-houses.”
In this case a person was prosecuted for soliciting' patronage for a physician, and the court says toward the end of the opinion, on page 29: “In this case appellant was charged and convicted for soliciting a patient for a physician, who was a graduate of medicine, and skilled, it is admitted, in his profession. It may be in bad taste, and a violation of the ethics of his profession, for a physician to employ a drummer to procure patients for him; but appellee had no legal power to make such drumming a crime, and punish it as such;” and the judgment was reversed for the reason that the ordinance was illegal and invalid, and was in restraint of trade, the ordinance “prohibiting drumming” or soliciting patronage for hotels, etc., not in any 'particular place, or places, but generally throughout the city.
Ordinances similar to the one under consideration have been upheld in many states, and after an examination of the authorities we are of the opinion that this ordinance is not *397 unreasonable, but is a valid ordinance, and within the power of the municipal corporation as conferred upon it by this statute which I have read.
The running and management of hacks and omnibuses has always been, to a greater or less extent, subject to the control of the provisions of ordinances passed by municipalities. A hack and omnibus is a public vehicle for the conveyance of the public, and their owners and drivers exercise certain privileges; at any rate, they have the use of and do use the streets of the municipality to a greater extent than private individuals. In many cities they are required to take out a license and pay a small fee therefor. The amount they may charge for their services is regulated in nearly all large cities. The places where backs and such vehicles shall stand when they are not being used is provided for and regulated by ordinance in many cities,
The presumption is in favor of an ordinance' passed by a municipal corporation. It is for the counsel to say, in the first instance, whether such an ordinance is necessary, whether the public interests require it; and the court will not find it to be unreasonable unless it clearly appears to be so. Upon this proposition I cite: 1st Dillon Municipal Corporations, section 327.
He says/whether an ordinance be reasonable and consistent with the law, or not, is a question for the court, and not for the jury. In a foot note under this section he quotes from a decision as follows: “Where the municipal legislature has authority to act, it must be governed not by our discretion, but by its own; and we shall not be hasty in convicting them of being unreasonable in the exercise of it. The courts doubtless have the power to deny effect to a bylaw obnoxious to the objection that it is unreasonable. It is, however, a power to be cautiously exercised, especially where the question is a practical one — for example, the length of time which ought to be allowed to vehicles to remain in the street, and as to which the city authorities, it is to be presumed, can judge better than the court.”
U I cite on the proposition that it must clearly appear that the ordinance is unreasonable, 11.Ohio St., 550, I read from 553:
“It is said, however, that the prohibition of this ordi *398 nance, though it might be necessary in a large and populous city, is unreasonable “in such a city as Columbus. On this subject, much must be left to the discretion of the city council, and unless that discretion be exercised in a manner clearly unreasonable, so as to infringe upon private rights, it is not within the province of courts to interfere. Columbus is one of the largest cities of the second class within the state, and the prohibition in question, especially in its application to sidewalks, may, for aught we can know, be eminently proper. It violates no private right; it does not forbid sales by auction, nor assume to regulate them in any other way than by prohibiting an invasion of the public rights. It is, therefore, not in restraint of trade.”
This ordinance in question prohibits the soliciting of patronage upon a platform of a depot or grounds round about it.
The purpose, evidently, was to prevent disorder and disputes and contentions between proprietors or managers of the different omnibuses and hacks and different hack lines in regard to travelers as they alighted from trains, and to prevent such a contention as appears from the record, arose in this case over a passenger; and it is a matter of common knowledge that those things are liable to arise out of the soliciting of patronage of people as soon as they alight from trains. As I said, there have been ordinances upheld in other states that went perhaps farther than this one. I cite a case in 122 Mass., page 60, Commonwealth against Matthews. The first paragraph of the syllabus is: “Under the General Statutes, C, 19, section 14, which provides that the mayor and aldermen of any city may make rules for the regulation of carriages, the mayor and aldermen of the city of Boston may make a regulation that no person having charge of any hackney carriage, shall stand with it to solicit patronage in any place other than the place assigned to it. ”
In our statute the power to regulate is given in the most general terms, as in the Massachusetts’ statutes.
I call attention also to a case in the 38th American Reports, page 286, found in the 27th Minn., 364, City of St. Paul v. Smith. There the ordinance provided that hack-men should take the place at railroad stations assigned them *399 by the police officer on duty at the stations- No particular place was named, but they were put under the control and authority of the member of the police force at The railroad station at the time. The court say at the end of the opinion: “The authority thus to assign places must necessarily be committed to some officer, and for obvious reasons it is very properly committed to the policeman on duty at the depot. As in other cases mentioned, this authority should, of course, be exercised with fairness to all concerned. The fact that the ground about the depots or stations where these ordinances are to be enforced, is not the property of the city, or public property of any kind, strictly speaking, is not important. The fact that it is commonly used - by hackmen in their business for the purposes mentioned in the ordinance, is sufficient.’’
Greene & George and Kinney & O’ Farrell, for Plaintiff in Error.
M. L. Shackleford, City Solicitor, for Defendant in Error.
We think that these authorities and the general doctrine relating to this subject as laid down by the courts abundantly sustain the proposition that this ordinance of the city of Fremont was a reasonable and proper regulation and ordinance. Some of the cases cited by plaintiff in error are not applicable to this case. If the railroad company were complaining, it being the owner of the grounds, and if it had entered into a contract with a hack line permitting the use of its grounds for any consideration, a different question would arise; but that question does not arise in this case, and we express no opinion .upon it. But we hold that this ordinance, so far as this plaintiff in error is concerned, is a reasonable regulation and provision enacted by the council of the city of Fremont, and .was authorized by the statute of the state giving the city power to regulate the running and management of hacks.
For these reasons the judgment of the court of common pleas will be affirmed, but without penalty.