## COMMONWEALTH *vs.* WILLIAM MATTHEWS.

**Suffolk.** Nov. 28, 1876. — Jan. 16, 1877.   ENDICOTT & LORD, JJ., absent.

Under the Gen. Sts. *c.* 19, § 14, which provides that the mayor and aldermen of any city may make rules for the regulation of carriages, the mayor and aldermen of the city of Boston may make a regulation that no person, having charge of any hack-ney carriage, shall stand with it to solicit passengers in any place other than the place assigned it.

A person, having charge of a hackney carriage, who, in violation of a city ordinance, leaves it standing in a place other than that assigned it by the board of aldermen, is to be considered as with it, although actually soliciting passengers in a railroad station, or out of sight of the carriage.

At the trial of a complaint charging the defendant with standing, in violation of a city ordinance, with a hackney carriage in a place other than that assigned it by the board of aldermen, a book, prepared for the guidance of the superintendent of hacks by the mayor and board of aldermen, and containing a list of the owners of such carriages and the places assigned, is admissible in evidence to show that the defendant was not assigned to the place where his carriage was found, but else-where.

At the trial of a complaint charging the defendant with the violation of a city ordi-nance that no person, " having charge of any hackney carriage, shall stand with such carriage to solicit passengers in any street other than the place assigned to such carriage by the board of aldermen," the presiding judge refused to rule that the meaning of the regulation was merely that one carriage should not oc-cupy the place which had been assigned to another. *Held*, that the defendant had no ground of exception.

Under the Gen. Sts. *c.* 19, § 14, providing that the mayor and aldermen of a city may make rules for the regulation of carriages, and that " such rules shall not take effect until they have been published at least one week in some newspaper published in the city," publication once a week for two weeks in such a news-paper is sufficient.

At the trial of a complaint charging the defendant with standing, in violation of a city ordinance, with a hackney carriage in Providence Street in the city of Boston, a place other than that assigned it by the board of aldermen, evidence that it had been used as a street by the public for twenty years, that the city had repaired and lighted it, and that during that time it had been so called, is admissible, in the absence of evidence of the laying out and acceptance of the street by the city; and in an instruction to the jury that this was evidence, from which they might infer that it had been located and dedicated to public use as a street, the word " dedi-cated " must be taken to mean " appropriated," and not of necessity a dedication by a private proprietor.

COMPLAINT dated August 16, 1876, charging the defendant with a violation of § 13 of the rules and regulations relating to hacks and wagons, passed by the board of mayor and aldermen, of the city of Boston, September 21, 1875, providing that " no

owner, driver, or other person having charge of any hackney carriage, shall stand with such carriage to solicit passengers in any street, square, lane, alley, or public place within the city, other than the place assigned to such carriage by the board of aldermen, under a penalty not exceeding twenty dollars for each offence."

At the trial in the Superior Court, before *Putnam*, J., the evidence of the government tended to show that, on August 14, 1876, the defendant stopped with his carriage in Providence Street, in Boston, near the Boston and Providence Railroad station ; that he entered the station, and, when the train came in, put on his badge and stood there soliciting passengers.

The defendant contended that this was not a standing with his carriage, within the meaning of the rule ; but the judge ruled that, if the defendant left his hack outside in the street, and went into the depot to solicit passengers to ride in his hack, it was a "standing" within the rule. There was no evidence that the defendant obtained any passengers, and the whole time did not occupy more than from three to five minutes.

To prove that this was not a place assigned to the defendant, the government offered as a witness Rufus C. Marsh, superintendent of hacks, who produced a book, which he stated to be a list of the owners of the several hackney carriages in the city, and the places assigned to them, put into his hands by the board of mayor and aldermen, for his guidance. The first column of this book, the witness testified, contained the names of all the owners of hackney carriages in the city ; and the second column contained a statement of the places assigned to them. From this book it appeared that Edward Bracket (in whose employ was the defendant) owned two coaches, Nos. 277 and 449, for which he had a license ; that the stand for 277 was at the American Stable, and the stand for 449 was at No. 105 Court Street.

The defendant objected to the book and the evidence of Marsh, and contended that there was upon this testimony no legal or sufficient evidence that he was not assigned to the Boston and Providence Railroad station ; but the judge admitted the evidence, and instructed the jury that this was evidence for them to consider, as tending to show that the defendant was not assigned to Providence Street.

The defendant asked the judge to rule, that the meaning of the rule was that the owner or driver should not stand in the place assigned to some other hack or to some one else, at the same locality; but the judge declined so to rule.

The defendant contended that there was no statute authorizing the board of mayor and aldermen to make these rules and regulations; but the judge ruled otherwise. The government contended that they were authorized by the Gen. Sts. c. 19, § 14.*

It also appeared that these rules and regulations were published once a week for two weeks in the Boston Journal, on September 24 and on October 1, 1875, and in the Boston Post on September 24 and 27, 1875. The defendant asked the judge to rule that they were not properly published; but the judge ruled that, if a publication was necessary, it was sufficient.

There was no legal evidence of any laying out of Providence Street by the city, or of its formal acceptance; but a witness testified that he had known this street for twenty years to be a common thoroughfare for the public, and that the street had been paved and lighted by the city during that time, and that it had been called Providence Street during that time. To this evidence the defendant objected. But the judge admitted it, and ruled "that if the jury found that this street had been used by the public as a street for twenty years, and that the city had repaired and lighted it, and that during this time it had been known and called Providence Street, it was evidence from which the jury might infer that it had been located and dedicated to public use as a street, and that it was Providence Street."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*E. L. Barney*, for the defendant.

*H. W. Chaplin*, for the Commonwealth.

---

* "The mayor and aldermen of a city may make rules and orders for the regulation of all carriages and vehicles used either wholly or in part therein, whether with or without animal power, with penalties for violations thereof." "Such rules shall not take effect until they have been published at least one week in some newspaper published in the city or in the county in which the city is situated. This section shall not impair the rights of a city to make by-laws relating to the subject."

AMES, J. We have no doubt of the power of the board of aldermen to establish such a regulation, under the authority given them by the Gen. Sts. *c.* 19, § 14. There is nothing, in the terms of that statute, that confines their powers to the making of rules as to the running of carriages in the streets; and it is manifest that the inconvenience occasioned by allowing them to stand at railroad stations, and other crowded places, might require equally minute regulations. The power to regulate is given in the most general terms, and we cannot say that the manner in which it is exercised is unreasonable.

There can be no doubt that the purpose and meaning of that section is to authorize the board of aldermen to prescribe the place at which the carriage is to stand. The person having it in charge may fairly be considered as with it, within the meaning of the rule, although for the time being he may be inside of the passenger station of a railroad, or in the act of soliciting passengers at a place out of sight of, and remote from, his carriage.

With regard to the testimony of the superintendent of such carriages, it appears that the book placed in his hands for his official guidance was prepared for his use by the board of aldermen, and purports to contain a list of the names of the owners of such carriages in the city, and a specification of the places assigned to them respectively. This, being the act of the board, was certainly competent evidence of an assignment of places, and might properly be considered by the jury as having a tendency to show that the defendant was not assigned to the place at which his carriage was found, but elsewhere.

The court rightfully refused to rule that the meaning of the regulation was merely that one carriage should not occupy the place which had been assigned to another. So narrow a construction would be contrary to the plain language of the section. The objection founded upon an alleged insufficiency of publication is also untenable. The rules had been published more than the one week required by the statute in two newspapers published in the city. Gen. Sts. *c.* 19, § 14.

There was no evidence of the laying out of Providence Street by the city, or of its formal acceptance; but enough was proved to make it certain that the city would be responsible for its con

dition, and liable in damages to any traveller upon it who should suffer any injury through any defect or want of repair, rendering it unsafe and inconvenient. It was shown to have been a common thoroughfare for the public for twenty years, and to have been known as Providence Street during that time. This evidence, though not conclusive, was admissible. *Jennings* v. *Tisbury*, 5 Gray, 73. *Fall River Print Works* v. *Fall River*, 110 Mass. 428. The instruction given to the jury, that upon this evidence the jury would have a right to infer that it had been located and dedicated to the public use as a street, could not be sustained, if the term "dedicated" were to be taken in its strictly legal and technical sense, as defined in *Hobbs* v. *Lowell*, 19 Pick. 405, and other cases in which that subject has been considered. We do not understand the presiding judge to have used the term in that sense. The words "located and dedicated" are not used disjunctively, as if to import that the way might have become a public street, either by location under the statute, or by dedication. On the contrary, the two terms are used in such a manner and connection as to indicate rather that they were substantially equivalent or synonymous expressions, and that the meaning of the instruction is the same as if the jury had been instructed that upon the evidence it would be competent for them to find that the way had been located and appropriated to the public use. It by no means imports of necessity a dedication by a private proprietor, within the meaning of the Gen. Sts. c. 43, § 82.                              *Exceptions overruled.*