# KENYON HOTEL CO. et al. v. OREGON SHORT LINE R. CO. et al.

## No. 3961.   Decided October 9, 1923.   (220 Pac. 382.)

1.  CARRIERS—COMPANY MAY GIVE PREFERENCE AS TO PARKING SPACE
    FOR VEHICLES ON ITS GROUNDS. A railroad company in providing
    parking space for vehicles on its own ground, for those who
    may solicit trade or patronage, may prefer one transportation
    or hotel company as against all others.[1]

2.  RAILROAD COMPANY MUST MAKE REASONABLE RULES FOR SAFETY
    AND CONVENIENCE OF PUBLIC PASSING TO AND FROM TRAINS.
    Where a railroad depot adjoins a public street which the public
    in passing to and from the trains must necessarily pass over, it
    is the duty of the railroad company to promulgate reasonable
    rules for the safety and convenience of the public passing to
    and from the trains.

3.  MUNICIPAL CORPORATIONS—ORDINANCE REGULATING PARKING OF
    VEHICLES NEAR RAILROAD DEPOT HELD NOT VOID AS EXCLUDING
    PUBLIC FROM STREETS. A municipal ordinance prohibiting
    motor vehicles carrying passengers for hire to stand within a
    certain distance of a railroad depot, and authorizing the police
    department to regulate the use of taxicab stands, and making it
    unlawful to park in any of the prohibited districts except in
    the places provided by the railroad companies, is not invalid as
    prohibiting use of the public street.

4.  MUNICIPAL CORPORATIONS—ORDINANCE REGULATING PARKING OF
    VEHICLES NEAR RAILROAD DEPOT HELD NOT TO DELEGATE CONTROL
    OF STREETS TO RAILROADS. A municipal ordinance regulating
    parking places for motor vehicles near railroad depots, and
    making it unlawful to park in prohibited districts except at
    places provided by the railroad companies, merely authorized
    designation by the railroads of places on their premises, and
    did not delegate to them the power to regulate traffic on the
    streets.

5.  MUNICIPAL CORPORATIONS—COURT WILL ASSUME REGULATIONS FOR
    PARKING MOTOR VEHICLES NEAR RAILROAD DEPOTS ARE NECESSARY.
    In the absence of a showing to the contrary, the Supreme Court
    will assume that a municipal ordinance and rules thereunder
    dealing with the parking of motor vehicles near railroad depots
    are necessary for the protection and convenience of the public.

[1] *Railroad* v. *Davidson*, 33 Utah, 370, 94 Pac. 10, 16 L. R. A. (N.
S.) 777, 14 Ann. Cas. 489.

6.   MUNICIPAL CORPORATIONS—ORDINANCE REGULATING PARKING OF
     MOTOR VEHICLES NEAR RAILROAD DEPOTS AND REGULATIONS THERE-
     UNDER HELD NOT UNREASONABLE.  A municipal ordinance fixing
     parking places for taxicabs and other motor vehicles near railroad
     depots, and prohibiting vehicles to park in the prohibited dis-
     tricts except in places provided by the railroad companies, and
     regulations made thereunder designating particular places for the
     vehicles of transportation companies and hotel companies and
     the public generally, *held* not invalid as unreasonable.[2]

7.   MUNICIPAL CORPORATIONS—CITY MAY PUNISH AS TRESPASS UNAU-
     THORIZED ENTRY OF VEHICLES ON RAILROAD PROPERTY.  Where a
     city has by statute the express power to punish for trespass, it
     may inflict such punishment for entry by motor vehicles on
     grounds of a railroad company near the depot without the com-
     pany's consent.

8.   MUNICIPAL CORPORATIONS—THAT RAILROAD MAY GIVE ADVANTAGE
     TO ONE HOTEL OR TRANSPORTATION COMPANY OVER OTHERS WILL
     NOT BE CONSIDERED IN DETERMINING VALIDITY OF ORDINANCE REGU-
     LATING PARKING.  In determining validity of an ordinance regu-
     lating the parking of taxicabs and motor vehicles belonging to
     hotel proprietors near railroad depots, the fact that the railroad
     may give one hotel company or transportation company an ad-
     vantage over another will not be considered; that matter being
     one for the Public Utilities Commission.

Appeal from District Court, Third District, Salt Lake
County; *G. A. Iverson*, Judge.

Suit by the Kenyon Hotel Company and others against the
Oregon Short Line Railroad Company and others. Judg-
ment for defendants, and plaintiffs appeal.

AFFIRMED.

*H. L. Mulliner*, of Salt Lake City, for appellants.

*Wm. H. Folland*, City Atty., *Shirley P. Jones*, Asst. City
Atty., *James Ingebretsen, Fisher Harris, Van Cott, Riter &
Farnsworth*, and *George H. Smith*, all of Salt Lake City, for
respondents.

FRICK, J.

---

[2] *Ogden City* v. *Leo*, 54 Utah, 556, 182 Pac. 530, 5 A. L. R. 960.

The plaintiffs, hereinafter called appellants, among whom are five companies owning and operating hotel properties in · Salt Lake City, jointly with about 60 private citizens of Salt Lake City, commenced this action in equity against the Oregon Short Line Railroad Company, the Salt Lake Transportation Company, the Salt Lake Union Depot Company, Salt Lake City, and the several city commissioners of Salt Lake City, hereinafter styled respondents, to enjoin the latter from enforcing a certain ordinance ·adopted by Salt Lake City and also certain rules adopted by said railroad and depot companies as approved by the commissioners of Salt Lake City, upon the grounds that said ordinance and rules are oppressive, unreasonable, discriminatory, and void. The complaint is very long and contains, as we view it, much that is of no importance here. The facts upon which the action is based, so far as necessary, will appear in the course of the opinion.

The ordinance in question reads as follows:

"It shall be unlawful for the owner, driver, or person in charge of any carriage, omnibus, taxicab or other vehicle used in carrying passengers for hire, while awaiting employment to stand within 300 feet of the Oregon Short Line depot, or the Denver & Rio Grande depot, except that taxicabs with an ordinary capacity for not more than seven persons licensed by the city shall be permitted to stand in the said prohibited districts at a place provided by the city which shall at the Oregon Short Line depot be the east side of Third West street commencing at the north line of the north side of South Temple street and extending northward along Third West street, and at the Denver & Rio Grande depot shall be on Rio Grande street in a space equally between the north and south sides of Third South and 20 feet west of the center line of Rio Grande street. No such taxicab shall occupy such stand unless the owner thereof shall have procured a permit in writing for such privilege from the board of commissioners of Salt Lake City, as hereinafter provided, and upon the recommendation of the chief of police. The board of commissioners upon the recommendation of the chief of police is hereby empowered in its discretion to grant permits for no more than fifteen taxicabs at such stations. The order in which such taxicabs may occupy said stands shall be regulated, controlled and directed by the chief of police. Such taxicabs shall occupy only the stand assigned to them by the chief of police in the space marked and designated by him. * * *

"It shall be unlawful for any other public or private passenger

vehicle to park in any of the prohibited districts; except at such places as have been provided for them by the Oregon Short Line Railroad Company and the Denver & Rio Grande Railroad Company."

The rules in question merely designate the particular places which are provided by the railroad and depot companies for the motor omibuses and motor vehicles of the transportation company, and for the motor vehicles of the several hotel companies who are plaintiffs, and for the vehicles used by the public generally.

We append the following sketch or plat which was used by the parties both in this court and in the court below to illustrate the arguments and which is referred to in their printed briefs. It is true that this case was determined on demurrer and the plat was not formally introduced in evidence, yet, in view that it is referred to in the briefs of the parties, it may be assumed that it correctly shows the locus in quo and may be helpful to the reader and give him a better understanding of the questions decided.

The parallelogram marked D, W, D, represents the building of the Oregon Short Line Railroad Company. The spaces marked S-1, S-2, are public streets. The one marked S-1 runs north and south in front of the depot building, and the other, marked S-2, intersects with the one running north and south and ends near the east side of the depot building. The curved lines marked C, C, C indicate the westerly curb of the street running north and south. The broken line marked L, L marks the original boundary of the lot or block on which the depot is situated. The space marked A indicates the space allotted to the vehicles of the transportation company, while the space marked B indicates the space set apart for the vehicles of the hotel companies who are plaintiffs and for the individual plaintiffs and others. Only a portion of space B is shown on the foregoing plat. That space extends farther to the south than is there shown. The parallel lines in the streets indicate the street railway lines on which are constantly operated street cars which run back and forth between the principal parts of Salt Lake City and the depots. The points marked E, E, show the entrances to the parking places marked A and B as aforesaid. The streets, as well as the parking places marked A and B, including the entrances, are paved with concrete. W indicates the waiting room in the depot building. The Oregon Short Line Railroad tracks are to the west and rear of the depot. The public, in passing from the streets to the trains and vice versa, must pass through the depot building, and by far the largest number pass through the building by means of a corridor which is immediately south of the space marked A, which is the space the vehicles of the transportation company occupy.

While the foregoing sketch merely shows the general situation of the Oregon Short Line depot and surroundings, it is also sufficient, in a general way at least, to illustrate the conditions prevailing at the depot of the Union Depot Company, which is situated a few blocks southerly from the Oregon Short Line depot, and we shall not attempt any further illustration of the situation at the Union Depot.

Recurring now to the ordinance, the bone of contention here, it must suffice to say that our statute confers ample

power upon Salt Lake City to regulate the traffic over the public streets and alleyways by vehicles and all others using the same for travel. The statute also confers power on the city to punish for "trespass and such other petty offenses as the city council [city commissioners] may deem proper." The authority of Salt Lake City to pass the ordinance in question, therefore, and to promulgate or to approve rules and regulations respecting the use of the streets and public grounds by vehicles of all kinds, cannot be questioned. The appellants, while not questioning that, however, contend, stating it in general terms: (1) That the ordinance in question is oppressive, unreasonable, arbitrary, and discriminatory; (2) that in permitting the railroad company and the Union Depot Company to determine and to assign places for the vehicles used by the transportation company and to select the places for the vehicles of appellants, the city delegated its governmental powers to said company; and (3) that in adopting the last sentence of the ordinance hereinbefore quoted the city exceeded its powers, in that it seeks to prohibit the appellants from using the public streets of the city.

It is insisted that the respondents, in allotting the respective places A and B, are arbitrarily and unreasonably discriminating in favor of the transportation company and against the appellants. The appellants who are operating hotels insist that they have the same right to use the space marked A as has the transportation company.

That a railroad company, in providing space for vehicles on its own ground for those who may solicit trade or patronage, may prefer one transportation company as against all others, or one hotel company as against others, is no longer an open question in this jurisdiction. See *Railroad* v. *Davidson,* 33 Utah, 370, 94 Pac. 10, 16 L. R. A. (N. S.) 777, 14 Ann. Cas. 489, where the authorities are collated. Appellant's counsel, with much vigor, however, argues that that case is not controlling here because the spaces allotted to the respective parties are at least partly in a public street, and hence appellants have the same right to use the streets with their vehicles as the transportation company, and

that respondents, in attempting to exclude appellants' vehicles, have transcended their powers. A sufficient answer to that contention is that a mere cursory examination of the plat shows that all of the spaces marked A and B have been withdrawn from public travel and that the curved line C, C, C constitutes the westerly boundary of the street running north and south and likewise marks the end of the street running east and west. But even though it were conceded that Salt Lake City and the railroad companies were seeking to regulate the traffic on the streets immediately in front of the entrances to the depots and through which entrances all the people going to and coming from the trains must pass and hence must also pass over the space in the streets immediately in front of the depot entrances, the railroad companies and the city, according to all the authorities, would still be within their rights. Where, as here, a depot adjoins a public street which the people, in passing to and from **2** the railroad trains, must necessarily pass over, it is not only the right but it is the duty of the railroad company to promulgate reasonable rules for the safety and convenience of the public passing to and from the trains.

One of the leading, and one of the most instructive, cases respecting the duty of common carriers in that regard, is the case of *Donovan* v. *Pennsylvania Co.*, 199 U. S. 279, 26 Sup. Ct. 91, 50 L. Ed. 192. The case at bar affords a very striking illustration of the correctness of the rule laid down by the Supreme Court of the United States in the Donovan Case, supra. Here we have more than 60 plaintiffs, among whom are some hotel companies, all of whom claim the right to use every part of the streets adjoining the railroad depots with their vehicles, consisting of motor cars of all kinds, for the purpose of soliciting trade or for any purpose. In addition to appellant, all hack drivers, taxicab drivers, truck drivers, express men, sight-seeing vehicles, and all others would claim the same rights and privileges. If, therefore, there were not some controlling or governing influence regulating the traffic and fixing the limits to the use of all kinds of vehicles in front of and near the entrances to the railroad depots, every one

passing to and from such depots would be in constant peril. The Prophet Nahum, it seems, must have had in mind a condition somewhat similar, yet in a much less aggravated form than would prevail around our depots, if appellants' contention should prevail. The prophet tells us:

"The chariots shall rage in the streets, they shall jostle one against another in the broad ways; they shall seem like torches, they shall run like the lightnings." Nahum, 2: 4.

It would be interesting indeed to obtain the prophet's description of some of our present day street scenes at or near some central point where all kinds of motor vehicles congregate and are operated by all kinds of drivers and engaged in all kinds of services, and where each traveler claimed the right to choose his own course and to drive or park his car at any place he chooses. What protection, under such conditions, the public would have in passing to or from one of our depots at train time, is more easily imagined than described, and we shall not attempt a description.

The questions here involved have, however, frequently been before the courts, and, so far as the writer is advised, have uniformly been decided against the contentions of the appellants where the statutes authorized the cities to pass ordinances regulating the traffic on public streets.

In the *City of St. Paul* v. *Smith,* 27 Minn. 364, 7 N. W. 734, 38 Am. Rep. 296, the Supreme Court of Minnesota, after referring to the statute conferring authority upon the city "to regulate" trucks and other vehicles using the public streets, in the course of the opinion, remarks:

"Under this authority the common council passed two ordinances, Nos. 107 and 133. No. 107 provides 'that hackmen, * * * when at or about any railroad depot or station, * * * shall obey the command and directions of the police officer or officers who may be stationed or doing duty at or about such depot or station * * * for the preservation of order, and enforcement of ordinances.' No. 133 provides that 'no owner or driver of any * * * hack * * * shall make any stand or stopping place, with or without his vehicle, while waiting for employment at any place on any street or public ground adjacent to any railroad or railway depot, * * * except in the place or places designated by the police officer on duty, from time to time, at such railway depot or station.' These provisions of the ordinances named were, in our

opinion, authorized by the charter provision above quoted, giving authority, among other things, to regulate hacks. That they are regulations of hacks is apparent, and in our opinion they are not unreasonable or oppressive. It is a matter of common knowledge that at and about the hours of the arrival and departure of passenger trains, confusion and disorderly brawling and breaches of the peace are very apt to occur at and about depots and stations in considerable towns, especially among those who are engaged in carrying passengers and baggage to and from such depots and stations. The only efficient preventive or remedy in the premises appears to be to put a police officer upon the spot, whose duty it shall be to enforce such applicable ordinances as the city council, in the exercise of chartered power, may have seen fit to adopt. This seems to be the general if not universal practice in all large cities and towns."

To the same effect are *Veneman* v. *Jones*, 118 Ind. 41, 20 N. E. 644, 10 Am. St. Rep. 100; *City of Ottawa* v. *Bodley*, 67 Kan. 178, 72 Pac. 545; *Lindsay* v. *Mayor, etc.*, 104 Ala. 257, 16 South. 545, 27 L. R. A. 436, 53 Am. St. Rep. 44; *Commonwealth* v. *Matthews*, 122 Mass. 60; *Depot Carriage & B. Co.* v. *Kansas City Terminal Ry. Co.* (C. C.) 190 Fed. 212; *City Cab, Carriage & Tr. Co.* v. *Hayden*, 73 Wash. 24, 131 Pac. 472, L. R. A. 1915F, 726, Ann. Cas. 1914D, 731; *Seattle Taxicab & Tr. Co.* v. *City of Seattle*, 86 Wash. 594, 150 Pac. 1134; *Ex parte Barmore*, 174 Cal. 286, 163 Pac. 50, L. R. A. 1917D, 688.

In *Veneman* v. *Jones*, supra, the Supreme Court of Indiana, in the course of the opinion, said:

"There can be no question but that the ordinance authorizing the depot marshal to prescribe the places where omnibuses, hacks and other vehicles should stand at the railroad depot, and requiring drivers to obey the directions of police-officers in regard to the places which their respective vehicles should occupy, was a proper regulation, and one which the municipal authorities had the power to pass"—citing cases.

In *City of Ottawa* v. *Bodley*, supra, the law is stated thus:

"A regulation of a city requiring hackmen and others who solicit passengers at railway depots to occupy certain places designated by the city marshal is not invalid."

In *Commonwealth* v. *Matthews*, supra, the decision is reflected in the first headnote, which reads:

"Under the Gen. St. c. 19, § 14, which provides that the mayor

and aldermen of any city may make rules for the regulation of carriages, the mayor and aldermen of the city of Boston may make a regulation that no person, having charge of any hackney carriage, shall stand with it to solicit passengers in any place other than the place assigned it."

In *Depot Carriage & B. Co.* v. *Kansas City Terminal Ry. Co.,* supra, the law is stated thus:

"A union depot company in a city has a right to make an exclusive contract with a concern for the transfer of passengers in that city, and may lawfully refuse to grant others engaged in the same business an opportunity to use the depot and adjacent grounds to solicit patronage on equal terms."

In *City Cab, C. & T. Co.* v. *Hayden,* supra, the court declares the law in the following words:

"A municipal corporation may assign stands to the omnibuses of the various hotels soliciting business from travelers arriving at a railroad station, and require the solicitors and vehicles to remain within the stands assigned, although some are much more advantageous than others, so that the hotels receiving the more favorable assignments have a material advantage over others."

It is not necessary to either refer to or quote from additional cases. Moreover, in view of the use of all kinds of motor vehicles upon our streets at the present day, the necessity for the regulation of the traffic thereon is greater than it was when some of the cases hereinbefore cited were determined; and that is especially true at or near our depots and railway stations where there usually is much congestion on the arrival and departure of important trains. Indeed, there is not one good reason that can be urged why the regulation should not be even more stringent at some places than the ordinance here in question provides.

Appellants contend, however, that the last sentence of the ordinance is void because, as they contend, they are prohibited from using the public streets, and because the power to regulate the traffic on the streets is by the city delegated to the railroad companies. It is contended that the ordinance makes it unlawful for plaintiffs to use the public streets. Such a construction of the ordinance is not a reasonable one. The ordinance merely authorizes the railroad companies to designate the place or places where the vehicles shall be parked

or be permitted to stand on their own premises. It does not permit the railroad companies to control the streets in the usual sense of that term. The railroad company and the Union Depot Company, as we have seen, have the **3, 4** legal right to protect their patrons in coming to and leaving the depots. That follows as an incident to their right to operate depots for the comfort and convenience of their patrons. The ordinance in no view that can reasonably be taken of it authorizes more than that. Nor is the fact that the Oregon Short Line Railroad Company and the Union Depot Company may have formulated the rules in question controlling. The city commissioners, being given the power to impose regulations, had the right to approve any reasonable rules, although prepared by some one other than themselves. The question is: Are the rules reasonable and have they been approved by the authority having power to promulgate and to enforce them? The city commissioners having approved the rules leaves them the same as though they had themselves prepared them. Then again, unless it appears upon the face of the ordinance or the rules that they are arbitrary and unreasonable, we must assume that they were adopted to meet some existing emergency, and that the city authorities were warranted in passing them.

As we have seen, street car lines pass in front of the depots in all directions. How many of such cars pass daily in different directions is not shown. Nor is the number of persons who may go to and come from the depots and trains on those street cars made to appear. Nor are we advised of the number and the importance of the trains or the approximate number of passengers that arrive and depart from the depots daily. All these things are important factors in determining the unreasonableness of the regulations, and **5, 6** in the absence of any showing to the contrary, we must assume that the regulations imposed by the ordinance and the rules were necessary for the protection and convenience of those passing to and from the depots and trains by means of the street cars and by means of all conveyances, including those who may come and go afoot. In view of all the fore-

going circumstances, the ordinances and rules complained of not only do not appear unreasonable but on the contrary seem quite reasonable and proper. *Ogden City* v. *Leo*, 54 Utah, 556, 182 Pac. 530, 5 A. L. R. 960.

It is, however, further urged that the ordinance is in excess of the power of the city, and is therefore void because it attempts to punish the plaintiffs for using the streets and also for entering upon the grounds of the railroad company. We know of no reason why Salt Lake City, in view of the express power conferred upon it by our statute to punish for trespass, may not do so when one enters upon the premises of another against the owner's consent or permission. The Supreme Court of Washington, in the case of *Seattle Taxicab & Tr. Co.* v. *City of Seattle*, 86 Wash. 594, 150 Pac. 1134, held:

"It is within the police power of a city to pass an ordinance prohibiting taxicab drivers from entering upon passenger depot property, or upon wharves used in connection with steamship traffic, to solicit passengers or baggage at certain times."

It may be that at times one hotel company may obtain an advantage over another hotel company in soliciting patronage, and that such may also occur as between transportation companies and others. If that be so, however, it is a matter that cannot be controlled by the courts. The matter of regulating public utilities in their business transactions and relations with the public is placed in the hands of the Public Utilities Commission of this state. If, therefore, a public utility abuses its right or privileges in dealing with the public or any of them, recourse for the redress of grievances should be had to the Public Utilities Commission. This court can do no more than to inquire whether an ordinance or law is unreasonable, oppressive, or discriminatory, or is contrary to the provisions of some statute or the organic law of this state. Moreover, in case a public utility is guilty of unlawful discrimination, that question should be first submitted to the Public Utilities Commission for investigation and determination.

It is very clear to our minds that the ordinance in question is not open to the criticisms urged against it by appellants,

and hence the judgment of the district court should be, and it accordingly is, affirmed, respondents to recover costs.

WEBER, C. J., and GIDEON, THURMAN, and CHERRY, JJ., concur.