State of Connecticut *vs.* Rocco Muolo.

Maltbie, C. J., Haines, Hinman, Banks and Avery, Js.

Argued October 2d, 1934—decided January 3d, 1935.

*Philip R. Pastore,* assistant city attorney, for the plaintiff in error.

*Joseph Koletsky* and *Kenneth Wynne, amici curiae.*

*Franklin Coeller* and *Louis Philip Hurley, Jr.,* for the defendant in error.

MALTBIE, C. J. The assistant city attorney of the city of New Haven filed an information in the City

Court against the defendant charging that, on September 8th, 1933, being an operator of a taxicab owned by the Terminal Taxi Company, he used a certain taxi stand on the easterly side of College Street in that city, in connection with the Hotel Taft, established by the board of police commissioners of the city acting as traffic authority and traffic commission of the city, with the approval of the owner of the hotel, the use of the stand being limited to taxicabs operated by the New England Taxi Cab Company, Incorporated, and the New Haven Yellow Cab Company, such cabs having been designated by the owner of the hotel. The defendant demurred to the information as insufficient in law and the trial court sustained the demurrer. The taxi stand was established under the provisions of § 56b of the General Statutes, Cum. Sup. 1933, which provides: "TAXI STANDS IN FRONT OF HOTELS. The traffic commission of any city or town is authorized to establish a public taxi stand in connection with any hotel within the limits of such city or town and may, with the approval of the owner or lessee of such hotel, limit the use of such public taxi stand to cabs of a company to be designated by such owner or lessee." The demurrer was sustained upon the ground that the portion of the statute authorizing a traffic commission, with the approval of the owner or lessee of the hotel in connection with which the stand was established, to limit its use to cabs to be designated by the owner or lessee, was unconstitutional and void. The only error assigned in the writ attacks the correctness of this conclusion, and while the briefs of counsel discuss other questions we shall not consider them. Practice Book, § 389.

It is incumbent upon any court, in the consideration of an attack upon the constitutionality of a legislative act, to approach the question with great caution, ex-

amine it with infinite care, make every presumption and intendment in its favor, and sustain the act unless its invalidity is clear. *Beach* v. *Bradstreet,* 85 Conn. 344, 349, 82 Atl. 1030; *State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 205, 132 Atl. 561. In the absence of constitutional or statutory prohibition, any court has power to pass on the constitutionality of a statute and it may be its duty to declare it invalid, but a proper regard for the great coördinate branch of our government, the legislative, and for the preservation of the respect of our citizens, who are apt to look askance upon a decision of a court so limited in its jurisdiction as the City Court of New Haven holding invalid the considered legislative judgment, dictates that such a court should take such action only upon the clearest ground or where the rights of litigants make it imperative that it should do so. Otherwise it is better for such a court to leave the decision to our higher courts, to which the matter may be brought by appeal or otherwise. 12 C. J. 799; *Ortman* v. *Greenman,* 4 Mich. 291, 294.

Under the law of this State the owner of land abutting upon a highway is presumed, in the absence of evidence to the contrary, to own the fee of the land to the center of the highway; the highway is but an easement for public travel and such uses as are incident thereto; the abutter retains all rights in the land not incompatible with the public easement; any person making a use of it beyond the scope of that easement commits a wrong against the owner of the fee, unless indeed he acts under legislative authority either in the furtherance of a public use and with compensation made or under a proper exercise by the State of its police power; and for one otherwise to maintain a place of private business in the highway in front of another's property is to commit a wrong against the

owner of the fee. *Peck* v. *Smith,* 1 Conn. 103; *Read* v. *Leeds,* 19 Conn. 182, 187; *Imlay* v. *Union Branch R. Co.,* 26 Conn. 249; *Woodruff* v. *Neal,* 28 Conn. 165, 167; *Canastota Knife Co.* v. *Newington Tramway Co.,* 69 Conn. 146, 36 Atl. 1107; *Cadwell* v. *Connecticut Co.,* 85 Conn. 401, 404, 83 Atl. 215, 444; *Knothe* v. *Zinzer,* 96 Conn. 709, 713, 115 Atl. 477. The owner of the fee holds his estate subject to the right of the public to the full enjoyment of the easement, under the changing conditions of life, and subject to such control as the Legislature may exercise under its police power. *Canastota Knife Co.* v. *Newington Tramway Co., supra,* pp. 151, 156; *New York, N. H. & H. R. Co.* v. *Bridgeport Traction Co.,* 65 Conn. 410, 432, 32 Atl. 953. "Two rights are to be guarded with equal care—that of the individual landowner, and that of the public at large; but his estate is the servient estate." *Canastota Knife Co.* v. *Newington Tramway Co., supra,* p. 158.

Within the scope of the police power of the State to regulate traffic upon the highways is its right to exercise a reasonable control over the operation upon them of motor vehicles for hire; *Modeste* v. *Public Utilities Commission,* 97 Conn. 453, 117 Atl. 494; *Cotter* v. *Stoeckel,* 97 Conn. 239, 116 Atl. 248; *State* v. *Darazzo,* 97 Conn. 728, 732, 118 Atl. 81; *Silver* v. *Silver,* 108 Conn. 371, 377, 143 Atl. 240; and this right includes a reasonable control of the extent to and the conditions under which they may stand upon the street awaiting patronage. *Commonwealth* v. *Matthews,* 122 Mass. 60; *Waldorf-Astoria Hotel Co.* v. *City of New York,* 212 N. Y. 97, 105 N. E. 803; *City Cab, Carriage & Transfer Co.* v. *Hayden,* 73 Wash. 24, 131 Pac. 472; 2 Elliott, Roads & Streets (4th Ed.) p. 1648. While the standing of taxicabs upon the streets awaiting patronage may to some extent be a convenience to the

public, it constitutes a use of the highways for the furtherance of a private business for profit, and as such it is peculiarly within the right of the State to impose regulations upon it. *Long's Baggage Transfer Co.* v. *Burford,* 144 Va. 339, 344, 132 S. E. 355; *Ex parte Dickey,* 76 W. Va. 576, 579, 85 S. E. 781; *Cutrona* v. *Wilmington,* 14 Del. Ch. 208, 124 Atl. 658; *In re William Hoffert,* 34 S. D. 271, 148 N. W. 20; 2 Elliott, Op. Cit., p. 1635. We cannot agree with the view that there is the same right to station vehicles for hire upon a highway awaiting patronage that the ordinary traveler has to use that highway for purposes of travel, which seems to be the conception underlying such decisions as those of *Park Hotel Co.* v. *Ketchum,* 184 Wis. 182, 199 N. W. 219, and *Baker* v. *Hasler,* 218 Mo. App. 1, 274 S. W. 1095. Except under proper authority from the State, it is unlawful for one person to maintain a standing place for vehicles for hire in front of another man's property without his consent. *Branahan* v. *Cincinnati Hotel Co.,* 39 Ohio St. 333; *McCaffrey* v. *Smith,* 41 Hun (N. Y.) 117 (distinguished in *Waldorf-Astoria Hotel Co.* v. *City of New York, supra,* p. 104, on the ground that in the former case the fee of the portion of the street involved was in the abutting owner). The provisions of the statutes' concerning the regulation of taxicabs by the public utilities commission do not purport and were not intended to give such vehicles any rights in the use of the highway beyond those which are within the scope of the public easement and certainly none which infringe upon individual property rights. General Statutes, §§ 3855 to 3861, as amended. The consent of the abutting owner to the use of his property as a taxi stand would, however, destroy any unlawful element there might be in so doing. *Mitchell* v. *Southern New England Telephone Co.,* 92 Conn. 633, 635, 103 Atl. 754.

Had the Legislature authorized the municipal authorities to establish a taxi stand in connection with any hotel with the consent of the owner of the fee in the portion of the street to be occupied by it, such legislation would undoubtedly be valid; it would preserve the balance between the right of travelers to the fullest enjoyment of the public easement and the protection of the property rights of the adjoining owner in the fee of the highway. How does the limitation in the law we are considering differ in principle from such a supposititious enactment? In authorizing the limitation of the use of a taxi stand established under the provisions of the act to a company designated by one who holds the fee in the highway where the stand is located, the Legislature has but recognized the common-law right of the abutter to control the use of the land in front of his property and his right to prevent its use, except in the exercise of the public easement, by anyone else unless with his permission. The act does not purport to restrict in any way access of taxicabs of other companies to the hotel premises for the purpose of receiving and discharging passengers or for other purposes incident to the ordinary operation of such cabs upon the streets of a city. The limitation of the act to hotel property finds its justification in the fact that because of the large number of transients and others who patronize hotels there is an unusual need for such service as taxicabs afford, and because the continual succession of vehicles coming to and going from them makes it of interest to them to limit and control vehicles standing in their vicinity; and the same considerations make the situation one where the Legislature might reasonably conclude that there is a special need for their regulation. *Waldorf-Astoria Hotel Co.* v. *City of New York, supra; Willard Hotel Co.* v. *District of Columbia,* 23 App. D. C. 272.

The terms of the act themselves provide for the establishment of taxi stands "in connection with" any hotel. Read broadly, this would authorize such stands upon other portions of a street than that of which the owner of a hotel had the fee. To construe the law as intending this would make it obnoxious to the very principles we have been discussing. We cannot impute to the Legislature an intent to pass an unconstitutional statute and a law should be construed, if it can reasonably be done, so as to make it valid. *Connelly* v. *Deconinck,* 113 Conn. 237, 240, 155 Atl. 231; *Connecticut Light & Power Co.* v. *Southbury,* 95 Conn. 242, 247, 111 Atl. 363. The title of the act, "Taxi stands in front of hotels," was appended to the law when it was enacted by the Legislature; Journal of the Senate, 1933, p. 1848; Public Acts, 1933, Chap. 263; and we may consider it in determining the legislative intent. *State* v. *Faro,* 118 Conn. 267, 272, 171 Atl. 660. Certainly when the Legislature referred to the consent of the owner or lessee of a hotel, it intended an effectual consent and that could only be a consent to the use of that portion of the street in which the owner had an estate in fee. We therefore construe the statute as applying to the establishment of taxi stands adjacent to hotels in those portions of the highway of which the owner of the hotel held the fee.

So construed, the law presents no ground of unlawful discrimination against any taxicab company not designated by the owner or lessee of a hotel as an occupant of such a stand. The act in its essence is but an exercise of the police power of the State in such a way as not to infringe upon the right which an abutting owner has to prevent the use of property he owns by persons not having his permission to do so. The situation differs essentially from one where a taxi stand limited to a company or companies is established by

municipal authority upon a highway the fee of which is not owned by an individual, or where the Legislature has assumed, in the exercise of its police power, to establish a taxi stand in front of the property of an adjoining owner regardless of his consent, and it may be that in such situation a limitation like that in the statute would constitute an unlawful discrimination. The act as it stands is not unconstitutional.

In reaching this conclusion we have not overlooked the decisions in other jurisdictions upon this and related questions. It is to be remembered, however, that our law recognizes that the owner of land abutting upon a highway whose title extends to the center of it has a higher right in the land in front of his property than is granted him in some other States. Even so, the weight of authority supports the conclusion we have reached. *Mader* v. *City of Topeka,* 106 Kan. 867, 189 Pac. 969; *Ritchhart* v. *Barton,* 193 Iowa, 271, 186 N. W. 851; *McFall* v. *City of St. Louis,* 232 Mo. 716, 135 S. W. 51; *Long's Baggage & Transfer Co.* v. *Burford,* 144 Va. 339, 132 S. E. 355; *Sanders* v. *City of Atlanta,* 147 Ga. 819, 95 S. E. 695; and see *Donovan* v. *Pennsylvania Co.,* 199 U. S. 279, 303, 26 Sup. Ct. 91; *Black & White Taxicab & Transfer Co.* v. *Brown & Yellow Taxicab & Transfer Co.,* 276 U. S. 518, 48 Sup. Ct. 404.

There is error, the judgment of the trial court is reversed and the case remanded to be proceeded with according to law.

No costs will be taxed in this court.

In this opinion the other judges concurred.