HENRY F. SULLIVAN *vs.* POLICE COMMISSIONER OF BOSTON.

Suffolk. December 13, 14, 29, 1937, January 3, 1938. — October 24, 1939.

Present: FIELD, C.J., LUMMUS, QUA, & COX, JJ.

*Constitutional Law,* Police power, Equal protection of the law. *Taxicab. Boston.*

The provisions of St. 1930, c. 392, § 5, providing in substance for the establishing of special taxicab stands in the city of Boston to be assigned by the police commissioner was a valid exercise of the police power as against a taxicab owner and operator not assigned such a stand.

PETITION, filed in the Supreme Judicial Court of the county of Suffolk on July 2, 1937, for a writ of certiorari.

The case was reported by *Donahue*, J., upon the petition and the return by the respondent.

*A. L. Brown*, (*J. J. Crehan* with him,) for the petitioner.

*A. J. Gorey*, for the respondent.

*H. W. Corbett*, *C. H. Innes*, & *C. J. Innes*, by leave of court submitted a brief as *amici curiae*.

LUMMUS, J. In Boston at the time when this case arose the operation of taxicabs was governed by a statute which included a taxicab in the expression "hackney carriage." St. 1930, c. 392, § 2. No person was permitted to "set up and use" or to "drive or have charge of" such a vehicle, without a license from the police commissioner. St. 1930, c. 392, §§ 2, 3, 4. St. 1934, c. 280. The petitioner was both the owner, and the "driver" or operator, of a taxicab, and was duly licensed in both capacities.

The statute provided for both "public" and "special" hackney stands on public ways. A "public" stand was open to all "hackney carriages" not assigned special hackney stands. St. 1930, c. 392, § 8. A "special" stand had to be "abutting . . . [a] hotel, station, pier or [public or semi-public] building," the owner, lessee or official representative of which had requested the establishment of such a stand, and had to be assigned by the police commissioner to a particular licensee or particular licensees. § 5.* The police commissioner was given "exclusive authority to make rules and orders for the regulation of hackney carriages and hackney stands, . . . within the limits of said city, with penalties for the violation thereof not exceeding twenty dollars for each offence." § 1. The rules (1936) § 11 provided that special stands "shall not be occupied by any vehicle other than a hackney carriage licensed therefor." By § 25 of the rules, "Any person or corporation violating any of the provisions of the foregoing sections shall forfeit and pay a fine not exceeding twenty dollars for each offense; and any licensed owner or driver who violates any of the

---

* Special taxicab stands on public highways were abolished by St. 1938, c. 508, in cities and towns accepting the provisions of the act.

provisions of the foregoing sections shall, in addition to said penalty, thereupon become liable to suspension or forfeiture of his license, and may be disqualified to hold a license thereafter." See also St. 1909, c. 221.

In June, 1937, the petitioner, who had no special stand, violated the rules by trespassing upon a special stand of the Checker Taxi Company at the South Station. From a suspension of his license for five days for that offence, he appealed to the police commissioner. The latter, after hearing, ordered on July 1, 1937, "that the suspension was proper; it shall stand as a matter of record in this department; and that no further action be taken in this case." The petitioner, contending that the record would injure him in his dealings with the police department, brought this petition for a writ of certiorari to quash the record.

This case involves no question as to the right to establish a taxicab stand or parking space on a public way against the will of an abutting owner. See *Opinion of the Justices*, 297 Mass. 559. The question relates solely to the right of the Commonwealth as against persons engaged in the taxicab business to establish a taxicab stand to which certain taxicabs are admitted and from which others are excluded. The system of special stands is assailed as denying "the equal protection of the laws" in violation of the Fourteenth Amendment to the Federal Constitution, and as contravening certain provisions of the Massachusetts Declaration of Rights which have been declared to "contain ample guaranties for equal protection of equal laws without discrimination or favor based upon unreasonable distinctions." *Brest* v. *Commissioner of Insurance*, 270 Mass. 7, 14. *Commonwealth* v. *Boston & Maine Transportation Co.* 282 Mass. 345, 351.

The business of operating taxicabs is plainly subject to regulation in the public interest. *Morley* v. *Police Commissioner of Boston*, 261 Mass. 269, 276. *Commonwealth* v. *Rice*, 261 Mass. 340. *Rafferty* v. *Police Commissioner of Boston*, 259 Mass. 145. *Burrell* v. *Checker Taxi Co.* 287 Mass. 108. The establishment of special taxi stands, adjoining railroad stations and other properties to which a reliable service of

taxicabs is a necessity, for the public as well as for the proprietor, is not unreasonably discriminatory. The Legislature might find that by reserving such a stand for the exclusive use of the taxicab owner selected by the proprietor of the abutting premises, a constant supply of taxicabs would be maintained and the public would be well served. The Legislature might find that the opening of all taxicab stands to all taxicabs would result at a particular stand in an excessive supply at some times and a dearth at others, as the drivers would seek the part of the city that at the moment might hold out the greatest promise of business. Such a finding might or might not be correct. The opposite conclusion might be equally reasonable. But the question was one for the Legislature to decide. Moreover, as was said in *Morley* v. *Police Commissioner of Boston,* 261 Mass. 269, 277, "This method of controlling and distributing the taxicab business may have a tendency to prevent congestion in street traffic at certain points, and if the licensees conduct their business from stands assigned, the police have a better opportunity to learn whether the conveyances are used for illegal purposes and whether the conditions of the licenses are being observed. The designation of stands and the requirement that licensees maintain service at them are justified for reasons based on the public welfare and convenience."

The question whether the establishment of special stands was in the public interest, was a legislative one, and the statute in our opinion was a valid exercise of the police power. *Commonwealth* v. *Matthews,* 122 Mass. 60. *State* v. *Muolo,* 119 Conn. 323. *McFall* v. *St. Louis,* 232 Mo. 716. *Mader* v. *Topeka,* 106 Kans. 867. *Ritchhart* v. *Barton,* 193 Iowa, 271. *Long's Baggage Transfer Co.* v. *Burford,* 144 Va. 339. *City Cab, Carriage & Transfer Co.* v. *Hayden,* 73 Wash. 24. *People* v. *Galena,* 24 Cal. App. (2d) 770.

*Petition dismissed.*