ARTHUR McFALL et al., Plaintiffs in Error, v. CITY OF ST. LOUIS et al.

**Division One, February 28, 1911.**

1. **HACK STANDS: In Front of Public and Private Property.** Public hack stands can only be established and maintained by the city in front of property belonging to the city. The city has no power or authority to authorize hack and carriage drivers to stand their vehicles upon a public street in front of abutting private property without the consent of the owner, and thereby obstruct the ingress or egress.

2. ————: ————: **Injunction: Licensed Hack Drivers.** An ordinance of the city, which confers upon the mayor, upon the written consent of the abutting property-owners, the right to grant a special license to a licensed carrier to use a part of the street as a public hack stand, and to refuse such special license to other licensed carriers of the same class who do not obtain such written consent from the abutting private property-owner, is not void. Any license to use the street as a public stand, without the consent of the abutting owner, would be invalid, and the granting of the special license, with the written consent of the abutting private owner, does not give to the licensee the exclusive use of the undefined part of the street used as a stand, and does not deprive other licensed carriers who do not have such special license of the right to drive their vehicles upon the stand area for a sufficient length of time to load or unload their passengers.

3. ————: ————: ————: ————: **Nuisances.** Private hack stands, maintained in a public street by specially licensed drivers, are not public nuisances, if they are expressly authorized by ordinance, and do not interfere with travel upon the streets. Nor are they private nuisances, if the abutting property-owners have agreed in writing to their maintenance, and as a result of their written consent the special license has been issued.

Error to St. Louis City Circuit Court.—*Hon. Matt G. Reynolds,* Judge.

AFFIRMED.

*Charles Summers* for plaintiffs in error.

(1)   Injunction lies to restrain proceedings of a municipal corporation which encroach upon private rights at the suit of one injuriously affected by a void ordinance or to prevent the doing of any legal wrong whatever, whenever, in the opinion of the court, an adequate remedy cannot be afforded by an action for damages. R. S. 1889, sec. 3649; Schopp v. St. Louis, 117 Mo. 131; Lockwood v. Wabash, 122 Mo. 100; Dillon, Mun. Corp. (4 Ed.), sec. 660.   (2)   And suit is properly brought in the name of plaintiffs, plus all others similarly affected and situated by the proceedings under the ordinance. 2 Dillon, Mun. Corp. (4 Ed.), sec. 914; Newmeyer v. Railroad, 52 Mo. 81; Lockwood v. Railroad, supra.   (3)   All persons affected by a decree declaring an ordinance, or any section thereof, void, must be joined as defendants. 15 Ency. Pl. & Pr. 682.   (4)   And the validity of an ordinance is tested by suit brought against the municipal corporation, or its officers, for acts done under it. Dill. Mun. Corp. (4 Ed.), sec. 420.   (5)   Equity has jurisdiction to restrain proceedings of a municipal corporation which encroach upon private rights. Schopp v. St. Louis, supra; High on Injunctions, sec. 1236; Railroad v. Chicago, 181 Ill. 299; State ex rel. v. City, 94 Mo. App. 637.   (6)   And the doing of an act authorized by ordinance, under a city's charter, may be shown to impose a burden without a benefit, and to be therefore unnecessary and oppressive. Corrigan v. Gage, 68 Mo. 541.   (7)   This is true, notwithstanding the fact that the act calls for legislative discretion. Ib. (8)   The power granted to St. Louis to regulate the use of streets extends to public uses only. Charter, art. 3, sec. 26, par. 5.   (9)   And therefore St. Louis has no power to authorize the appropriation of any part of a street for private purposes. State ex rel. v. Murphy, 134 Mo. 548; Brown v. Railroad, 137 Mo.

529; Schopp v. City, supra; Lockwood v. Railroad, supra. (10) Nor can a city farm out any part of the public streets to a private person to be used by him to promote his individual business. It can only permit the streets to be used for public purposes. State ex rel. v. St. Louis, 161 Mo. 384. (11) Plaintiffs' right under their license to follow their vocation is a property right, arising from their contract with the city, and their duties and rights are constitutionally identical with those of all other parties of the same class, and discrimination against some and favoritism to others of the same class is repugnant to the letter and spirit of our organic law. Nor can a third party be permitted to narrow or abridge such contract. Const. of Mo., art. 4, sec. 53; 1 Tied. State and Fed. Con. of Pers. and Prop. 436; R. S. 1889, p. 80; Shoe Co. v. Saxey, 131 Mo. 223. (12) Said Sec. 1747 is void because derogatory of common right, and because it discriminates between the same class of subjects. Joplin v. Leckin, 78 Mo. 8; Baty v. Cavanaugh, 137 Mo. 503; Willow v. Withaupt, 61 Mo. App. 275; St. Louis v. Spiegel, 75 Mo. 145; Dill. Mun. Corp. (4 Ed.), 763; Cooley on Tax. 403; Cooley, Const. Lim., pp. 201, 494. (13) Section 1747 is plainly local and special, because it purports to vest a control of public streets in adjoining occupants which is denied to other citizens; there is nothing in the charter of St. Louis which confers such power upon the assembly of said city; the power is not necessarily or fairly implied; nor is it essential to the declared objects and purposes of the corporation. Ib. (14) Said section 1747 is void for the reason that it permits that to be done by a licensed class of carriers when armed with a special permit, which when committed by other parties not armed with such permit, is made a penal offense. Railroad v. Chicago, 181 Ill. 299. (15) Monopolies are not favored but, on the contrary, are prohibited by the State laws. R. S. 1889, secs. 8965 and 8966;

Kirkwood v. Meramec, 94 Mo. App. 637. (16) And a monopoly which tends to the destruction of plaintiffs' occupation constitutes an indictable offense at common law. 3 Greenleaf on Evid., secs. 79, 90 and 95. (17) This section 1747 necessarily tends to create a private territorial monopoly in the public streets of the passenger traffic business at and about the points designated as private hack stands. No limitation or restriction is placed upon the discretion given to the occupant of premises, or the number of vehicles which may perpetually stand adjoining such front.

*Lambert E. Walther* and *Truman P. Young* for defendants in error.

(1) Courts do not sit to determine moot questions. In order to invoke the jurisdiction of the courts there must be some actual controversy between a party plaintiff and a party defendant which can be settled by the court's judgment. American Book Co. v. Kansas, 193 U. S. 49; Singer Mfg. Co. v. Wright, 141 U. S. 696; Marye v. Parsons, 114 U. S. 325; Fisher v. Baker, 203 U. S. 147. (2) A private individual cannot maintain a suit to suppress a public nuisance or redress a public wrong unless he sustains some special injury thereby. Baker v. McDaniel, 178 Mo. 447; Cummings Realty & Inv. Co. v. Deere, 208 Mo. 66; Givens v. Van Studdiford, 86 Mo. 149; Glaessner v. Brewing Assn., 100 Mo. 508. (3) Section 1747 of the municipal code is valid. (a) It is within the charter powers of the city to pass such an ordinance. Charter, art. 3, sec. 26, paragraphs, 2-5-8-14. (b) The use of the streets by hacks and carriages waiting for employment is a legitimate public use, incident to travel thereon. Veneman v. Jones, 118 Ind. 41; Helena v. Gray, 7 Mont. 486; People ex rel. v. Brookfield, 6 App. Div. Sup. Ct. N. Y. 398. (c) No portion of the public street can be used regularly for such purpose in such

a way as to annoy the adjoining property-owner, or obstruct his ingress and egress, without first obtaining his consent to such use. Branahan v. Hotel Co., 39 Ohio St. 333; Lippincott v. Dasher, 44 N. J. Eq. 120; McCaffrey v. Smith, 41 Hun 117; Donovan v. Penn. Co., 61 L. R. A. 140, 120 Fed. 215; Schopp v. St. Louis, 117 Mo. 131.

WOODSON, P. J.—This is a bill in equity seeking to enjoin the defendants, the city of St. Louis, the Mayor and Chief of Police thereof, from enforcing section 1747 of the Municipal Code of the City of St. Louis, approved April 3, 1900, regarding the use of public streets in said city for standing places of hacks, carriages and such other vehicles. The petition was held bad on demurrer; and plaintiffs declining to plead further, final judgment was entered dismissing the bill. In due time the plaintiffs sued out of this court a writ of error.

The petition in the cause, as shown by plaintiffs' abstract of the record, which was adjudged insufficient by the circuit court, was as follows (formal parts omitted):

"Plaintiffs state that each of them are separately and individually owners and licensed operators of carriages and hacks, and that their present existing occupation, by means of which they earn their livelihood, and which they are now, and have been at all times herein mentioned, pursuing, is that of duly licensed carriers, that is to say, public and common carriers, by means of their said carriages and hacks, of passengers and their baggage, for hire, through and over the public streets of the city of St. Louis, State of Missouri. That in pursuit of their said business they have in all respects complied with all the ordinances of said city, which govern the licensing of public and common carriers in said city. That there are many other parties and persons similarly engaged in the

business aforesaid, who are similarly situated and affected with the plaintiffs by this proceeding, and who have complied with all the ordinances aforesaid. That the said parties and persons are too numerous to be joined as parties plaintiff, and hence plaintiffs bring this suit in their own name, and on their own behalf, as well as on behalf of all others similarly situated and affected as aforesaid.

"That at all times herein stated, and there is now, in full force and effect in said defendant city of St. Louis, a certain Municipal Code of said city, which said code is known as ordinance number 19,991, and which ordinance was duly enacted by the Municipal Assembly of said city on the third day of April, 1900.

"That under the provisions of section 1708 of said code, plaintiffs, while severally plying their present existing occupation as aforesaid, are severally required to pay, and, at all times herein stated, have paid, to defendant city annually, as a license fee, the sum of five dollars for each two-horse carriage hack, and the sum of three dollars for each one-horse hack.

"That for the purpose of enabling said plaintiffs as a class to successfully and lawfully solicit and secure custom and traffic in their said licensed public calling, plaintiffs require public stands for their said vehicles in said city, where they may stand for service at points convenient to transit and resident public in said city.

"That all public carriers of the same class with plaintiffs as aforesaid, who have been duly licensed as aforesaid, when they each and severally desire to stand for public service at public hack stands provided by said city, are each and severally, as members of said single class, entitled to reasonable access to all public stands lawfully created by defendant city.

"That under the provisions of 1746 of said code, plaintiffs, and all other carriers of the same class of

public carriers as aforesaid, after having been duly
licensed as aforesaid, are required, when standing for
public service on the public streets of said city, to stand
with their said vehicles at a certain public stand pro-
vided by section 1746 of said code, located on the north,
west and south sides of the court house of and in de-
fendant city.

"That each and all of the said licensed public car-
riers of the said class to which plaintiffs belong as
aforesaid, have equal and reasonable access to said
public hack stand provided for in said section 1746 of
said ordinance and code.

"That section 1747 of said ordinance and code pro-
vides for a special class of hack stands upon the pub-
lic streets of said city, whereby only an uncertain and
undetermined number of said licensed public carriers
of the class to which plaintiffs belong as aforesaid, are
permitted to stand for public service upon condition
that such carriers have first secured the permission of
a certain class of occupants of property of said city,
when said permission is supplemented by the written
approval of the mayor of said city; said section 1747
being in words and figures as follows:

" 'Sec. 1447. *Stands in Front of Private Premi-
ses—How Regulated.*—Occupants of premises in front
of which it is desired to stand for employment cabs,
cabriolets, carriages, coupes or one-horse vehicles, may
give permission in writing to the owner or driver so
to do, which permission shall not be effective until it
is approved by the mayor, and it may be revoked by
the mayor at any time, whereupon all rights under it
shall at once cease and be ended.'

"Plaintiffs state they have at no time, either
jointly or severally, participated in any attempt to se-
cure the establishment or maintenance of a public or
private hack stand under the provisions of said sec-
tion 1747 of said ordinance, and that plaintiffs have
at no time attempted to stand for public service with

their several vehicles upon the public streets of said city at or upon any vehicle stand provided for by said section 1747.

"Plaintiffs charge and aver that said section 1747 of said code, entitled, 'Stands in Front of Private Premises—How Regulated,' in fact authorizes the condemnation of the public streets to private uses; 2, That said section 1747 confers upon occupants of premises adjoining public streets, certain rights and privileges and control over public streets which are denied to others; 3, That said section 1747 discriminates between licensed carriers of the same class; 4, That said section 1747 permits that to be done by a special license, which, if done by others of the same class, not having a special license, constitutes a penal offense under section 1747 of said code; 5, That said section 1747 fosters a monopoly in the passenger traffic in said city; 6, That defendant city of St. Louis is without power under the Constitution and laws of the State of Missouri, to authorize by ordinance the appropriation to private use of any street or any part of any public street or streets of said city, and is without power to discriminate in the distribution of licenses and favors between subjects of the same class to which plaintiffs belong as aforesaid.

"Wherefore, plaintiffs charge that said section 1747 of said ordinance is void and of none effect.

"Plaintiffs further state that under the provisions of said section 1747, defendant city of St. Louis, over the objections and remonstrances of plaintiffs, has, at all times herein stated, and now does maintain certain hack and carriage stands upon the public streets and highways of said city and State for the exclusive use and benefit of the special licensees hereinafter mentioned, and who are named as defendants herein, and that the Mayor of the City of St. Louis, who is defendant Rolla Wells, has unlawfully issued over his official signature to the certain licensed pub-

lic carriers of the same class with plaintiffs as aforesaid, a written permission to stand with their said vehicles for public service, and to occupy at all times, both by day and by night, with their said vehicles, horses and drivers, as hack stands, and at points from which said licensees are permitted under the terms of said section 1747 to solicit, receive, control and monopolize public passenger traffic, many large areas of the public streets of the said city; and defendant Rolla Wells as aforesaid, and defendant Matthew Kiely as aforesaid, together assist defendant city in the unlawful maintenance of said carriage and hack stands. And plaintiffs further aver that said carriage and hack stands are and constitute public nuisances as hereinafter set forth.

"Plaintiffs state that said hack stands, the dates of said permits, the names of said licensees, and the areas of said private and unlawful stands are respectively as follows, to-wit:

"Permit 1. Dated January 13, 1903. Name of licensee, defendant Wand Livery & Undertaking Company. Location of stand, adjoining northeast corner of Broadway and Elm street. Area of said street so occupied, about 100 square feet."

(Then follow some twelve or fifteen others, differing only in dates, names of licensees and locations of stands.)

"Plaintiffs state and charge, upon information and belief, that said licensees, who are defendants herein, to-wit: Wand Livery & Undertaking Company, Barney McGilligan, Philip Deis, Missouri District Telegraph Company, and the Public Hack and Drivers' Association, are, except defendants Phillip Deis and Barney McGilligan, corporations under the laws of the State of Missouri; that the said defendants, Phillip Deis and Barney McGilligan, are individuals, and are acting as such. Plaintiffs state and charge that all of these aforesaid licensees are now, and by virtue .

of their said permits or licenses have, at all times herein stated, unlawfully obstructed and are obstructing and occupying with their said passenger vehicles, horses and drivers, both by day and by night, and using for their special use, and to the permanent hindrance and exclusion of plaintiffs as public carriers, said several areas of said public streets; and plaintiffs state that by virtue of the premises plaintiffs are denied the right to participate upon fair terms in the competition of passenger traffic in the territory controlled as aforesaid by the licensees of said carriage and hack stands in the business which naturally flows from and to, and is naturally tributary to, the said locations. And plaintiffs state that said territory from which they are severally so excluded provides the most profitable field for the licensed public carriers of plaintiffs' said class, amounting in value annually in a sum of many thousand dollars. And plaintiffs state that by reason of the unlawful acts committed by the defendant city of St. Louis and its Municipal Assembly, Matthew Kiely, and defendant Rolla Wells, the defendant city's chief of police and mayor, respectively, plaintiffs have suffered and now suffer a legal wrong to their present existing occupation, and plaintiffs, while this proceeding is pending, are at all times injured by said unlawful acts, in that they are annoyed, delayed and prevented from traveling over said portions of said streets, and are denied the use thereof, and their earning power and capacity has been greatly impaired and is now being greatly impaired, and they have suffered and are now suffering great loss in their incomes, and the actual damages so sustained, and now being sustained, aggregate a large sum, but is not susceptible of computation and apportionment between or by plaintiffs aforesaid, and is therefore irreparable.

"To the end therefore that plaintiffs may have that relief which they can obtain in a court of equity,

and that the city of St. Louis, Rolla Wells, Matthew Kiely, and all the licensees hereinbefore mentioned who are made defendants herein, may be required to answer plaintiff's bill of petition, but not under oath, answer under oath being hereby expressly waived, the plaintiffs pray that said section of said code, to-wit, section 1747, be declared illegal, null and void, and that a perpetual injunction may be decreed by this honorable court, directed to the city of St. Louis, Rolla Wells, Mayor of said city, and to his successors in said office, and to Matthew Kiely, the Chief of Police of said city, and to his successors in said office, perpetually restraining them from establishing and maintaining any private carriage and hack or vehicle stands on any portion of the public streets of said city, and perpetually restraining them and each of them from permitting any owner or driver of carriages or other vehicles to occupy said areas of said streets as private vehicle stands as aforesaid, unless the same be lawfully constituted public hack stands, free of access to all licensed carriage drivers and owners alike, and upon the same terms, and that plaintiffs may have such other orders, judgments and reliefs as shall seem agreeable to equity and meet in the premises.

"And plaintiffs pray that summons be directed to the said city of St. Louis, Rolla Wells, Mayor of said city, and Matthew Keily, Chief of Police of said city, and defendants Wand Livery and Undertaking Company, Phillip Deis, Barney McGilligan, Missouri District Telegraph Company, and the Public Hack and Drivers' Association, commanding them and each of them, at a certain time and under a certain penalty, to be and appear before this honorable court, and then and there a full, true and direct and perfect answer make to all and singular the premises, and further to stand to, perform and abide by such further orders, directions and decrees therein as to your honor shall seem meet."

As previously stated, to this petition a demurrer was filed and sustained. Afterwards, at the December term, 1907, of said court, the plaintiffs dismissed the cause against all the defendants except the city of St. Louis, Rolla Wells, Mayor, and Matthew Kiely, Chief of Police.

The demurrer of the city was as follows:

"Comes now the defendant, the city of St. Louis, and demurs to the amended petition of the plaintiffs herein, on the following grounds, to-wit:

"1. Because the said petition does not state facts sufficient to constitute any cause of action as against this defendant.

"2. Because it does not contain or state any matter of equity wherein the court could base any decree or give to the plaintiffs any relief as against this defendant.

"Wherefore, this defendant prays to be hence dismissed with its costs."

The demurrers filed by the other defendants were similar in import to the one filed by the city.

I. The plaintiffs' contention is that section 1747 of ordinance 19991 is void for the reason that it confers upon the Mayor of the city of St. Louis, when based upon the written consent of certain property owners, the right to grant a special license to a certain class of licensed carriers, and refuses such license to others of the same class who do not possess such written consent; that the defendants while pretending to act under the provisions of said ordinance, before set out, have, by means of said special licenses, established and now maintain a large number of private hack stands upon the public streets of the city, and thereby control the major portion of the passenger carrying business of said city, by reason of the fact that said stands are easy of access to the densely populated districts and business centers of said city, there-

by furnishing said special licensees the exclusive occupancy and right to solicit traffic from said special stands; and that plaintiffs, and many others of the same class holding a general license, are denied the equal right and privilege of participating in and enjoying the rights conferred upon said special licensees issued under and in pursuance to said section 1747.

In support of this contention we are cited to the following cases: Schopp v. St. Louis, 117 Mo. 131; Lockwood v. Wabash Ry. Co., 122 Mo. 89 l. c. 100; Dillon, Mun. Corp. (4 Ed.), sec. 660.

In the first case cited, the plaintiffs instituted proceedings for the purpose of enjoining the city of St. Louis from maintaining and leasing stands in Third and Broadway streets, in front of their property, in pursuance to an ordinance duly enacted, setting apart that portion of said streets lying between Christy Avenue and Howard Street as a market "for farmers and other wagons bringing produce to the market for sale." The evidence in that case showed that the stalls or stands in question were permanent in character, obstructed the street in front of plaintiffs' property and materially interfered with and obstructed ingress and egress to and from their property, to their great damage.

In the case of Lockwood v. Wabash Railway Co., the plaintiff sought to enjoin the defendant from laying and maintaining tracks and operating a steam railroad in front of his property on Collins Street, being only twenty-four feet in width from curb to curb, and which already contained one track. In that case the evidence showed and this court held that the laying, maintaining and operating of the second track in front of plaintiff's property, upon said street, amounted practically to a total obstruction to the ingress and egress to and from his property, and "to a practical

condemnation of this portion of Collins Street to the private and almost exclusive use of the defendant."

In each of those cases this court held, and properly so, that the erection and maintenance of the stalls in the one case and the railroad track in the other constituted both a public and a private nuisance in the streets of said city, and that because of the injury caused thereby to the plaintiff's property injunction would lie.

Judge Dillon in his excellent work on Municipal Corporations (4 Ed.), section 660, announces the same rule.

However, those authorities are not in point here. The stands here in question are not permanent in character, but are simply spaces or areas in the streets, embraced by imaginary lines, upon which hacks, carriages and similar vehicles stand while not in actual service. The licensees of such stands cannot occupy and use them to the exclusion of the plaintiffs or the public at large. The plaintiffs and all others, at will, may drive over said areas and stand their horses and vehicles thereon a sufficient length of time to enable them to load and unload their freight and passengers regardless of the special licenses.

If any one of the plaintiffs should at any time have a passenger to deliver or to receive at any of the places described in the petition, he would have, through the passenger, a right of access to that place. [Donovan v. Pa. Co., 61 L. R. A. 140, 144, 120 Fed. 215.]

The only difference that I can see between the general and the special license mentioned is, the latter can never be issued except where written consent is first obtained from the abutting property owners, agreeing that the space in front of their property may be used for such stands. This consent, of course, is required to be obtained in order that ingress and egress to and from their property may not be obstruct-

ed or interfered with, and thereby damage their property without their consent. Clearly, it was the design of the city council in requiring the consent of the property owners to be obtained, to avoid the effect of the rulings announced by this court in the cases of Schopp v. St. Louis, and Lockwood v. Wabash Ry. Co., supra. Without that consent, according to the authorities cited, the city would have no power or authority to authorize hack and carriage drivers to stand their horses and vehicles upon the streets in front of abutting private properties, and thereby obstruct the ingress and egress.

For this reason, the general license mentioned, if attempted to authorize or justify the maintenance of such hack stands in front of private property, would be held invalid for violating that provision of the Constitution which prohibits private property from being taken or damaged without just compensation; but no such objection could be interposed against the general ordinance mentioned, for the reason that by its terms it is restricted in its operation to stands located in streets in front of property owned by the city, and not by private parties.

Under this view of the law, even though this court should grant the relief prayed for, it would lead to nothing, for plaintiffs could not use any of the places designated in the special licenses any more than they can now. They would still be required to obtain the consent of the owners of the abutting property, which they state they have never attempted to do. [Schopp v. St. Louis, supra.]

By reading the petition it will be observed that the plaintiffs do not ask to have the so-called private hack stands, described therein, abolished because they interfere with public traffic on the streets of the city; but, upon the contrary, they ask that the defendants be enjoined from permitting hackmen to occupy the described areas as private stands, unless the same be

lawfully constituted public hack stands, free of access to all licensed hack and carriage drivers alike, and upon the same terms. That cannot be lawfully done, for the reason that public stands can only be established and maintained by the city in front of property belonging to the city; and to grant the injunction under those circumstances would have only the effect of putting plaintiffs' rivals out of business, and that too without opening up the private stands to themselves, for the obvious reason that if the city should devote parts of the streets in front of private property to public hack stands, the property-owners would immediately object thereto, and proceed to have them declared private nuisances, as was done in the cases previously cited.

The private stands in question are not public nuisances, for the reason that they are expressly authorized by said section 1747, and do not interfere with travel upon public streets; nor are they private nuisances, for the reason that the abutting property-owners have agreed in writing to their maintenance.

In Veneman v. Jones, 118 Ind. 41, where a kindred question was presented, the Supreme Court of Indiana held valid an ordinance authorizing the police officers to prescribe the places where hacks and other vehicles should stand at a railway station. That case could have been maintained, and doubtless was maintained, upon the theory that railway depots are quasi-public grounds, and, consequently, the streets in front thereof were subject to reasonable police regulations.

And in Pennsylvania Railway Co. v. Chicago, 181 Ill. 299, the plaintiff, the abutting property owner, and not the cabman, sought to enjoin the maintenance of a hack stand created by an ordinance in front of its depot. The Supreme Court of Illinois held the ordinance valid on the ground that the railroad was a quasi-public corporation, and its depot buildings were therefore public in character, and that the company

could not refuse to permit the use of the street as authorized by ordinance for the benefit of the public.

Branahan v. Hotel Co., 39 Oh. St. 333.—Where the use and enjoyment of private property is interfered with by a cab-stand and access rendered impossible, an ordinance granting the privilege of a cab-stand is without authority of law and constitutes no justification for obstructing the right of access to the street.

Lippincott v. Lasher, 44 N. J. Eq. 120.—Where such use of the street results in foul odors it will be enjoined at the suit of the owner of the property affected.

McCaffrey v. Smith, 41 Hun 117.—No use can be made of a highway other than to pass and repass, without the consent of the owner of the fee.

See also the Schopp case, 117 Mo. 131.

In People ex rel. v. Brookfield, 6 App. Div. Sup. Ct. N. Y. 398, a licensed cabman sought by mandamus to compel the Commissioner of Public Works to remove or cause to be removed all hackmen and others using or claiming to use as a hack stand portions of certain streets adjoining the Hotel Waldorf and the Holland House in New York City, and to remove all vehicles occupying said streets, on the ground they constituted obstructions and nuisances. The writ was refused, and the court said: "While the temporary occupation of a street is for certain purposes permitted, the law requires that the Commissioner of Public Works shall not allow permanent obstructions amounting to a nuisance to be maintained in any public street, whether such occupancy is sought to be justified with or without a permit. But relative to the question of temporary or permanent occupancy, we agree with the respondents, that a certain use of the streets by carriages, either in front of private residences, or in front of hotels, clubs, theaters, churches and similar buildings, is a legitimate use of the streets as such, and when they are occupied temporarily and reasonably

by licensed cabmen or by private carriages, not only should the Commissioner of Public Works not be compelled to interfere, but he has no legal right or power to do so, unless such occupancy becomes so clearly and unmistakably annoying and continuous as to constitute an occupancy which the law would regard as a nuisance." [p. 403.] And on page 402, the opinion uses this language: "We do not think it will be contended even by the relator that a liveryman who has the permission of the proprietors of the hotels to supply the calls of guests is not entitled to some reasonable use of the streets adjoining the hotels."

We are, therefore, of the opinion that said section 1747 of the ordinance is valid, and not subject to the criticisms lodged against it, and for that reason the demurrers to the petition were properly sustained.

There are several other minor questions presented and discussed by counsel for the plaintiffs in error, but the view we have taken of the case renders it unnecessary to pass upon any of them.

Finding no error in the record, we are of the opinion that the judgment of the circuit court should be affirmed; and it is so ordered. All concur, except *Valliant, J.,* absent.