PARK HOTEL COMPANY, Respondent, vs. KETCHUM and others, Appellants.

*May 6—June 3, 1924.*

*Municipal corporations: Use of streets: Rights of regulation: By municipality: By abutting owner: Taxicabs: Parking at curb: Permission of abutting owner: Discrimination.*

1. Streets are dedicated for the primary purpose of travel, and are for the use of all, upon equal terms, for any purpose consistent with the object for which they are established, subject to such valid regulations as may be prescribed by the constituted authorities for the public convenience. p. 183.

2. A taxicab may stand at a street curb waiting for a fare, subject to such limitations as may be imposed by public authority, and to the further limitation that such use shall not interfere with the rights of abutting property owners. p. 185.

3. An abutting owner, even though he owns the fee to the center of the street, cannot object to any use of the street incident to public travel, unless such use interferes with his rights as an abutting owner. p. 185.

4. An abutting owner may not confer special privileges upon those who are entitled to use the public streets except upon equal terms with others similarly situated. p. 188.

5. Where the plaintiff company, conducting an hotel abutting on a street, permitted certain taxicab owners to park their cabs at a portion of the curb designated for that purpose, it could not exclude all other taxicabs therefrom. p. 188.

APPEAL from a judgment of the superior court of Dane county: AUGUST C. HOPPMANN, Judge. *Reversed.*

This action was brought by the plaintiff as lessee of the Park Hotel, in the city of Madison, to restrain the defendants, who were drivers or owners of taxicabs, from standing their taxicabs upon the street abutting said hotel while waiting for passengers. From a judgment restraining the defendants from "driving their cabs. up to the curb upon the street abutting upon the premises so occupied by the plaintiff and stopping the said cabs on the said street, except when they have passengers to discharge at the said hotel conducted by the plaintiff, or when some person at the said hotel desires to enter one of the said cabs; and from stopping their cabs in the streets opposite the premises so occupied by the plaintiff for a longer time than is necessary to discharge or take on passengers," the defendants appealed.

For the appellants the cause was submitted on the brief of *Hill, Thomann & Beckwith* of Madison.

For the respondent there was a brief by *Sanborn, Blake & Aberg* of Madison, and oral argument by *John B. Sanborn.*

OWEN, J. The streets are dedicated. for the primary purpose of travel. They are for the use of all, "upon equal terms, for any purpose consistent with the object for which they are established; subject of course to such valid regula-

tions as may be prescribed by the constituted authorities for the public convenience; this to the end that, as far as possible, the rights of all may be conserved without undue discrimination." *Donovan v. Pennsylvania Co.* 199 U. S. 279 (26 Sup. Ct. 91), at p. 303. Taxicabs are the modern development of the old hackney coach. They have come to be a public necessity for the purpose of facilitating travel in large cities. They are a convenience which the public demands. In order to serve the public they must be upon the streets. They may either stand at the curb waiting for a fare or travel about the streets seeking to pick up a passenger. In either event their use of the street is a use incident to public travel. Their use of the streets in this manner, especially by standing at the curb, may be regulated by public authority. Such a regulation, however, is not a grant of, but a legitimate limitation upon, the use of streets, in the public interest. Such regulation of hackney coaches has long been recognized. The power of the city council in this behalf is a familiar provision of city charters.

In *Masterson v. Short,* 3 Abbott's Prac. Rep. N. s. 154, 157, it is said:

"The system of hackney coaches standing at designated places in the streets of a city grew out of the necessity of meeting the public demands. A demand arose in cities for means of transit from point to point other than by walking. As the city increased in extent of territory and became more populous the demand increased. This gave rise to a class of men who procured one or more vehicles, according to their means, and plied the streets for hire. It was soon found necessary to place these men under special police regulations, and as one of those regulations to assign certain places in the streets where they might stand waiting for customers. Such regulation was necessary for the control of the hackmen and for the convenience of the public. Its object was to prevent the hackmen from traveling with their empty vehicles in search of custom in the streets otherwise sufficiently crowded and also to prevent their stopping and remaining for any considerable time at inconvenient places; but the great ob-

ject was to have hacks standing at various points where the public would be most likely to want them and where they would cause the least inconvenience to other vehicles or injury to the surrounding property."

It is clear that a taxicab is making a legitimate use of a city street while standing at the curb waiting for a fare, which use is subject to such limitations as may be imposed by public authority, and subject to the further limitation that it shall not interfere with the rights of abutting property owners.

The rights of abutting property owners are stated in 3 McQuillin, Mun. Corp. § 1322, to be as follows:

"(1) The right of access, often referred to as that of egress and ingress; (2) the right of light and air; (3) the right of view; (4) the right to have the street kept open and continued as a public street for the benefit of their abutting property; and (5) as stated in a recent New York decision, whatever adds to the value of the street to the abutter."

It seems that, so far as these rights are concerned, it matters not whether the abutter owns the fee to the center of the street. Whether the abutter or the public owns the fee, these rights attach to the abutting property owner as an incident to his ownership. Even though he be the owner of the fee, he cannot object to any use of the street which is an incident to the primary use of the street, *i. e.* public travel, unless such use interferes with the rights above enumerated.

The standing of vehicles at the curb has been frequently enjoined at the suit of abutting property owners. *Schopp v. St. Louis,* 117 Mo. 131, 22 S. W. 898; *McFall v. St. Louis,* 232 Mo. 716, 135 S. W. 51; *Branahan v. Hotel Co.* 39 Ohio St. 333; *McCaffrey v. Smith,* 41 Hun, 117; *Goodwin v. Hamilton,* 6 Pa. Dist. Rep. 705. In each of the above cases, however, it appeared that the practice enjoined interfered with the abutting property owner's right of access or

right of view. Such relief, however, was denied in *Pennsylvania Co. v. Chicago,* 181 Ill. 289, 51 N. E. 825; *Waldorf-Astoria Hotel Co. v. New York,* 212 N. Y. 97, 105 N. E. 803; *Montgomery v. Parker,* 114 Ala. 118, 21 South. 452.

In *Waldorf-Astoria Hotel Co. v. New York,* 212 N. Y. 97, 105 N. E. 803, the court had under consideration the validity of an ordinance of the city of New York establishing a public hack stand alongside of the curb adjacent to the Waldorf-Astoria Hotel. Prior to the enactment of this ordinance the hotel, under permits issued by the bureau of licenses at the mayor's office, had maintained hack stands in the street abutting its hotel, and one of the grounds of complaint was that the public hack stand designated under the new ordinance will occupy the identical space now occupied by the plaintiff in furnishing such service to and for the use of its patrons and guests, thereby working irreparable harm to the plaintiff in that it will not be able conveniently and properly to continue to furnish such service to its patrons and guests. The court held that the plaintiff's right as an abutting owner to access, light, and air was preserved by the provision in the ordinance requiring a space of thirty feet to be kept open and unoccupied by any hack in front of the principal hotel entrance, and denied the injunction.

In *Montgomery v. Parker,* 114 Ala. 118, 21 South. 452, the city council established a street in front of the Exchange Hotel as a stand for two hacks. Parker was the driver of a hack belonging to the proprietor of the hotel and parked his hack at the curb when there were two hacks already there. This was prohibited by the ordinance. He was prosecuted for violating the ordinance, and it was held that even though he was in the employ of the hotel he was guilty of a violation of the ordinance in parking his hack at the curb when there were already two hacks belonging to other concerns parked in the same place. The court said:

"We declare the law to be, that when a part of a freehold becomes in fact a public highway or public street of a

city, whether effected by dedication or conveyance of the owner, the state, in its sovereignty over all public highways and public places, has full police power to regulate the actions of all persons in their use of them, and the manner of their use, not inconsistent with their use as public streets or highways, and to make such alterations from time to time as the state may deem proper; and we further hold that the dedicator or grantor has no greater right or interest in the use of a street or public highway, as such, and the manner of its use, than any other person of the public."

In the instant case the facts are stipulated, and it appears that "the plaintiff corporation has marked off on South Carroll street in the city of Madison areas on South Carroll street in front of the said hotel and have marked said spacings along said curbing, 'Taxi stand,' 'Bus stand,' and 'Crossing, keep clear.' The plaintiff corporation allows the taxicabs of the Yellow Cab & Transfer Company and of Paul Kingston to stand and park their taxicabs in said areas for longer periods of time than is necessary to unload and take on passengers and to stand their cabs there while waiting for business as such common carriers, and have forbidden the defendants herein from using said areas for parking purposes and for the purpose of standing their cabs there while waiting for business in front of said Park Hotel, but are permitted to load and unload passengers in front of said hotel and in the said parking space, but not to remain longer than is necessary to take on and unload passengers or baggage." From this it appears that this action is not brought for the purpose of protecting plaintiff in its rights as an abutting property owner. It permits the taxicabs of the Yellow Cab & Transfer Company and of Paul Kingston to stand and park at a portion of the curb designated for that purpose, but seeks to exclude all other taxicabs therefrom. If the taxicabs of the favored companies do not interfere with the plaintiff's rights as abutting owner, then certainly other cabs will not interfere therewith.

It is apparent that the plaintiff has attempted to confer upon the Yellow Cab & Transfer Company and Paul King-

ston special rights and privileges in the use of a city street. As said in the beginning, the streets are for the use of all upon equal terms. It is not within the power of an abutting owner to confer special privileges upon those who are entitled to use the streets only upon equal terms with others similarly situated.

It follows that the plaintiff is not entitled to the relief for which it prays, and that the judgment appealed from was erroneous.

Before closing this opinion, however, we feel it our duty to refer those who may be interested in the questions here considered to the *Taxicab Cases,* 82 Misc. 94, 143 N. Y. Supp. 294, for a very comprehensive and helpful discussion of these and many cognate questions.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss the complaint.