## Richmond.

## LONG'S BAGGAGE TRANSFER COMPANY v. ETTA W. BURFORD AND OTHERS.

March 18, 1926.

1. STREETS AND HIGHWAYS—*Power of Municipality over its Streets—City of Lynchburg.*—The council of the city of Lynchburg under its charter has absolute control of the streets of the city for the public interest.

2. STREETS AND HIGHWAYS—*Power of Council over Streets—Rights of Public—City of Lynchburg.*—Every citizen of the city of Lynchburg has, under its charter, the common right to travel upon and transport his property over the streets in the ordinary course of business. Persons desiring to use the streets to conduct a transportation business for private gain are on a different footing.

3. STREETS AND HIGHWAYS—*Use of Streets—Conducting Transportation Business.*—No one has the right to conduct a transportation business for private gain over the streets of a city without the permission of the municipal authorities. These authorities have the right to grant such privilege to one and refuse another, or withhold it from all. If granted, they have the right to regulate it.

4. STREETS AND HIGHWAYS—*Use of Streets—Conducting Transportation Business—Case at Bar.*—In the instant case, the city council having the right to refuse defendants the privilege to use the streets for the conduct of a transportation business for private gain, it cannot be said that an ordinance under which one of their competitors secured the assignment of private cab stands has deprived defendants of any interest or constitutional right to use the streets of the city.

5. STREETS AND HIGHWAYS—*Use of Streets by Carrier for Hire—Police Power.*—The right to use the streets of a city as a common carrier for hire is a privilege and not an inherent right, and may be granted or refused by the city, in the exercise of its police power, at its pleasure. The right may be wholly denied or it may be permitted to some and denied to others because of its extraordinary nature.

6. STREETS AND HIGHWAYS—*Cab Stands—Rights of Abutting Owner.*—An ordinance providing for stands for passenger vehicles for hire, without a clause requiring the written consent of the owner or person in control of the abutting property, would not necessarily be invalid, provided it was so worded as to prevent interference with the rights of such abutting property owner.

7. STREETS AND HIGHWAYS—*Ordinance Regulating Taxi Stands on Streets—*

*Case at Bar.*—Under the general welfare clause of the city charter of the city of Lynchburg and subsection twenty-six, chapter six, section nine thereof, the city council has full authority to regulate the location of taxi stands on its streets; and an ordinance providing that the chief of police, on application in writing stating the location of the stand desired, accompanied by the written consent of the abutting property owner, may assign to the applicant such stand if in his judgment it will best serve the convenience of the public, is valid and binding.

8. STREETS AND HIGHWAYS—*Ordinance Regulating Taxi Stands on Street—Case at Bar.*—An ordinance providing that, if in his judgment it will best serve the convenience of the public, upon consent in writing of the abutting property owner, the chief of police may assign to an applicant a taxi stand, cannot be said to confer upon the abutting landowner the right to farm out for private profit the use of a public street, since his written consent, standing alone, confers no right or privilege upon the owner or operator of the motor vehicles. The ordinance made the public convenience paramount, was general in its terms and applied to all owners or operators of motor vehicles doing business in the city, and was therefore valid.

9. INJUNCTION—*Taxi Cab Stands—Interference by Competitors—Case at Bar.*—The assignment of a taxi cab stand by the chief of police, under the terms of a valid city ordinance, to complainant, gave the complainant a valuable property right which a court of equity will protect by injunction. The fact that the assignment of the stands may be revoked in no way affects the right of the complainant to have its rights to the space assigned to it protected against the trespasses of its competitors in business while it is in force.

10. INJUNCTION—*Violation of a Criminal Statute or Penal Ordinance.*—Courts of equity will not restrain an act merely because it is a violation of a criminal statute or of a penal ordinance of a city; yet, where such violation results in special damages to property rights, which it would be difficult or impossible to ascertain, equity, in order to prevent a multiplicity of prosecutions, the legal remedy being inadequate, will grant complete relief by injunction.

11. INJUNCTION—*Office of Injunction—Extension of the Application of the Remedy.*—Interposition by restraining orders is a matter of growth and keeps pace with advancing civilization. Courts are continually finding new subjects for such relief; and while it is true that the familiar rule requiring the existence of a property to justify the granting of this relief is generally adhered to, yet in many instances it seems that such adherence was only superficial.

Appeal from a decree of the Corporation Court of the city of Lynchburg. Decree for defendant. Complainant appeals.

*Reversed.*

Long's Bag. Trans. Co. *v.* Burford, 144 Va. 339.  341

Opinion.

The opinion states the case.

*Lee, Martin & Gregory* and *Leon Goodman*, for the appellant.

*Strode & Edmunds*, for the appellees.

West, J., delivered the opinion of the court.

The council of the city of Lynchburg passed a general ordinance regulating the business of operating motor vehicles for hire. So much of the ordinance as is material here reads as follows:

"Taxi and public automobile stands:

"(1) Stands for passenger motor vehicles for hire may be assigned to the owner or operator of such vehicles by the chief of police, which said stands shall be at such places within the city as in the judgment of said chief of police will best 'serve the convenience of the public.

"(2) Any such owner or operator of such vehicles desiring to have such stand assigned him, shall make application therefor in writing to the chief of police, stating in such application the location of the stand desired by him and the number of such vehicles he desires to occupy such stand and shall file with said application the written consent of the owner or person in control of the property abutting such stand. No application shall be granted by said chief of police unless such consent of the owner or person in control of the abutting property be filed with him by said applicant. Any such consent may be revoked by said owner or person in control, upon giving ten days notice to such owner or operator of said vehicles, and filing a copy thereof with said chief of police.

"(3) Any such applicant who has secured the consent in writing of the owner or person in control of the property abutting the stand applied for, and whose application for such stand has been refused by said chief of police, may appeal to the police justice, who, after hearing all testimony that may be submitted to him, shall grant said application if in his judgment the public convenience will be served. If said police justice is of the opinion that such public convenience will not be served, then he shall dismiss such appeal.

"(4) This subsection shall not be construed to prevent or interfere with the driver of any vehicle for temporarily stopping at any convenient place for the purpose of discharging or receiving passengers."

The ordinance also provides penalties for each violation of any of its provisions.

Long's Baggage Transfer Company, the complainant, which operates passenger motor vehicles for hire in the city of Lynchburg, pursuant to the foregoing ordinance, secured the written consent of the owners and managers of the Virginia Hotel and the Hotel Carroll in that city, and was assigned by the chief of police a private taxicab stand in front of the Virginia Hotel for two taxicabs, and in front of the Hotel Carroll for one taxicab.

Forthwith, Etta W. Burford and others, the defendants, who operated taxicabs in the city, took possession of the stands assigned the complainant and declared their intention to occupy them without regard to the rights of the complainant.

Complainant thereupon filed a bill in equity against the defendants, setting forth the facts and its rights in the premises, and praying that defendants be permanently enjoined and restrained from occupying with their cabs and vehicles any part of either of said

Long's Bag. Trans. Co. *v.* Burford, 144 Va. 339.  343

Opinion.

stands, except so far as they may have proper occasion to temporarily stop in said stands for the purpose of receiving or discharging passengers.

The defendants demurred to and answered the bill. The decree sustaining the demurrer and dismissing the bill is before us for review.

The demurrants contend:

1. That the ordinances relied on are *ultra vires* unconstitutional and void; and

2. That, if valid at law, violations thereof do not furnish ground for injunction relief.

(a). What authority has the council of the city of Lynchburg over its streets, and are the ordinances in question valid?

The charter of Lynchburg contains the general welfare clause, and in addition provides in subsection twenty-six of section nine, chapter VI, that the council is authorized—

"To regulate and control * * * the hiring or use for pay of carriages, carts, wagons and drays," and by subsection nine of section nine, Chapter VI, "to take care, supervision and control of the streets, squares and commons." Section nine, Chapter VI, also provides that the council "shall have all the general powers vested in it by the Constitution * * * and laws of the State, and shall have power to enact ordinances providing for the exercise within its jurisdiction of all police power which the State may exercise under the Constitution, except such as may be specially denied cities by act of the General Assembly."

[1, 2, 3, 4] The council has absolute control of the streets of the city for the public interest. Every citizen has the common right to travel upon and transport his property over them in the ordinary course of business. This right the council may reasonably regulate

in the public interest, without undue discrimination, but cannot abrogate it. Persons desiring to use the streets to conduct a transportation business for private gain are on a different footing. No one has the *right* to conduct such business over the streets of the city without the permission of the municipal authorities. They have the right to grant such *privilege* to one and refuse another, or withhold it from all. If granted they have the right to regulate it. Having the right to refuse defendants the privilege to use the streets for the conduct of a transportation business for private gain, it cannot be said that an ordinance under which one of their competitors secured the assignment of private cab stands had deprived defendants of any interest or constitutional right to use the streets of the city.

[5] This court, speaking through Burks, J., in *Taylor v. Smith*, 140 Va. 236, 124 S. E. 259, 264, quoted with approval the following from *Ex parte Dickey*, 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F, 840: "The right of a citizen to travel upon the highway and transport his property thereon in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain, in the running of a stage coach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual and extraordinary. As to the former, the extent of legislative power is that of regulation; but as to the latter, its power is broader, the right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature."

Further, 140 Va. 234, 124 S. E. 263, Judge Burks says: "The right to use the streets of a city as a common carrier for hire is a privilege and not an inherent

right, and may be granted or refused by the city, in the exercise of its police power, at its pleasure." Citing many authorities.

In *Schultz* v. *City of Duluth*, 203 N. W. 449, the Supreme Court of Minnesota, passing upon the validity of an ordinance to regulate the intracity motor bus business in the city, which did not allow them to operate on streets where the street cars operate on double tracks, held the ordinance was not void as discriminatory or as class legislation, since no one has the right as a matter of course to conduct a private business upon public streets.

In *Odell* v. *Bretney*, 71 N. Y. Supp. 449, 62 App. Div. 595, the plaintiffs obtained a special license from the proper authorities of New York city, as provided by ordinance of the city, to maintain, in the street upon which Rector's Hotel is located, a hack stand primarily for use by the patrons and guests of the hotel, and had obtained from the hotel permission to conduct their business in the street opposite the premises, pursuant to the license granted. Defendants, who were licensed to make use of the *public* hack stands designated by city ordinances, attempted to make use of the space occupied by the plaintiffs. Plaintiffs were awarded an injunction which was made permanent, enjoining the defendants from making use of the stands assigned to the plaintiffs. Disposing of the defendants' contention that the city had no right to grant the special privilege the court said: "The authorities have only limited right to permit the use of the street by private parties and ordinarily some necessity must exist to authorize an obstruction therein, * * * but the owner of property has the right to its beneficial use and enjoyment and in order that such result may be obtained, the city has authority to allow a tem-

porary occupation of the streets where the privilege granted is reasonable and does not unnecessarily interfere with the use of the streets by the public.''

[6] The ordinance in question, under which the private stands were established at the two Lynchburg hotels, operates in the public interest. It protects the rights of the abutting owner and preserves to all licensed operators of cabs the right to receive and discharge passengers at said stands. The stands do not obstruct the use of the streets as public thoroughfares; and the assignment of the space to the complainant authorizes it to stand its cabs there while not in actual service, thereby enabling the traveling public to secure conveyances when desired from the hotels to the railroad stations and other parts of the city. We do not wish to be understood as deciding that the ordinance would be invalid without the clause requiring the written consent of the owner or person in control of the abutting property, provided it was so worded as to prevent interference with the rights of such abutting property owners.

In *Mader* v. *Topeka*, 106 Kan. 867, 15 A. L. R. 341, 189 P. 969, the ordinance attacked was similar to the Lynchburg ordinance, in that it provided that it was unlawful for owners of taxicabs, etc., to stand any such vehicle on any public street in the city of Topeka without the written consent of the owner or person having control of the abutting property, and authorized such owner or person in control, upon notice, and the commission, without notice, to revoke such consent or permit; and provided further that this ordinance should not be construed to prevent any owner of a licensed vehicle from temporarily stopping at any convenient place for the purpose of discharging or receiving passengers. The court held that the

Long's Bag. Trans. Co. *v.* Burford, 144 Va. 339. 347

Opinion.

ordinance was unconstitutional. In the discussion of the question involved, 189 P. 972, 106 Kan. 871, 15 A. L. R. at page 345, the court said: "Is the ordinance invalid because it delegates power to abutting property owners to grant or withhold the consent? It will be observed that this consent is not required for the purpose of passing over the streets, nor for stopping to discharge a passenger or to take on a passenger; it forbids the establishment of a hack stand by the proprietor of a taxicab or hack in any portion of a public street without first obtaining the written consent of the abutting owner. * * * It cannot be doubted that the abutting owner possesses valuable property rights in a public street which are not enjoyed by the public. His right to ingress and egress to and from his property cannot be unduly restricted."

And further, 189 P. 972, 106 Kan. 873, 15 A. L. R. at page 346, the court says: "The provision requiring the property owner's consent before the street may be occupied for the purposes of establishing hack stands is not unreasonable. It is not open to the objection that it permits unlawful discrimination, because it applies to all proprietors of hacks and taxicabs and to all abutting owners. It leaves no unregulated discretion in some officer of the corporation. It provides for all the terms under which the permit is to be issued, and prescribes a uniform rule applicable to all of the classes to which it applies."

In *McFall* v. *City of St. Louis*, 232 Mo. 716, 135 S. W. 51, 33 L. R. A. (N. S.) 471, the court, according to the syllabus, held that "an ordinance providing that permission by abutting occupants to stand certain passenger vehicles in streets shall become effective when approved by the mayor, who may revoke it, is valid and not void as permitting the mayor to grant

a special license to a certain class of licensed carriers and refuse it to others of the same class, who do not have the abutting occupant's consent." This was a suit to enjoin the city of St. Louis, the mayor and the chief of police thereof from enforcing the ordinance referred to in the syllabus, *supra*, on the ground that the ordinance was invalid. The contention of the plaintiffs was overruled and the bill dismissed. In the course of its opinion, the court, 135 S. W. at page 54, 232 Mo. 729, said: "The stands here in question are not permanent in character, but are simply spaces or areas in the streets, embraced by imaginary lines, upon which hacks, carriages and similar vehicles stand while not in actual service. The licensees of such stands cannot occupy and use them to the exclusion of the plaintiffs or the public at large. The plaintiffs and all others, at will, may drive over said areas, and stand their horses and vehicles thereon a sufficient length of time to enable them to load and unload their freight and passengers, regardless of the special licenses."

In *Henderson* v. *City of Bluefield*, 98 W. Va. 640, 127 S. E. 492, the court sustained the validity of a municipal ordinance, making it unlawful for drivers of taxicabs, motor buses and jitneys to solicit passengers for hire on the streets of the city, to stand or park the same in the city closer than 100 feet of any railroad passenger station or the terminus of any interurban street railway car line, or to leave such vehicles during the time they are being used in the public service, and providing penalties therefor, as having been enacted in the reasonable exercise of the police power of the municipality. In the course of its opinion, the court says: "The proper exercise of the police power permits the municipality, independent of any

statutory authority conferred upon it, to regulate the use and enjoyment of the streets in the interest of the public health, general welfare and convenience of the people." The court says, also: "While it is true that municipal ordinances to be valid must be reasonable, the presumption is in favor of their validity, and it is incumbent upon any one seeking to have them set aside as unreasonable to point out or show affirmatively wherein the unreasonableness consists."

The commissioners of the District of Columbia enacted an ordinance requiring drivers of public vehicles, while waiting in the streets, to place their vehicles in any location designated by the policemen, and to be always within five feet of the vehicle. The court, sustaining the validity of this ordinance in *Barnes* v. *District of Columbia*, 24 App. D. C. 458, said: "Every regulation concerning the location of vehicles at railway stations and cab stands reposes some discretion in the officers stationed at such places for their enforcement. That this discretion may, in instances, be arbitrarily exercised and abused, cannot render the ordinance itself unreasonable and unjust and therefore invalid."

The New York court, in *People ex rel. Van Norder* v. *Sewer Water & Street Commission*, 90 App. Div. 553, 86 N. Y. S. 445, in upholding the validity of an enactment prohibiting any hackman from permitting his horse or vehicle to stand in any public street of a village, or to walk or drive through the streets soliciting patronage, answering the contention that the law deprived the relator of his property without due process of law, said: "It seems to me a complete answer to this contention is that the relator has no legal right to conduct his business in a public street, except he does so under a lawful license authorizing

him so to do. The law in question does not prohibit the relator from engaging in the occupation of a hackman, but simply lays down salutary rules, prohibiting his soliciting patronage as such hackman in the public street."

To support their contention, defendants rely upon *Montgomery* v. *Parker*, 114 Ala. 118, 21 So. 452, 62 Am. St. Rep. 95; *Park Hotel Co.* v. *Ketchum*, 184 Wis. 182, 199 N. W. 219, 33 A. L. R. 351; and *Waldorf-Astoria Hotel* v. *New York*, 212 N. Y. 97, 105 N. E. 803.

In the *Montgomery Case*, the city ordinance provided that a portion of a certain street in front of a designated hotel be established as "a stand for two hacks," and prescribed punishment for any one who should occupy such portion of said street with a hack when it was already occupied by two other hacks. It was held that the ordinance was valid and enforceable against a hack driver who violated the same although employed by the designated hotel to serve its guests. But the court held further that if the evidence had shown that the ordinance prevented and obstructed him and the guests of the hotel in the reasonable access to and egress from the hotel, to their inconvenience and his injury, then he would be entitled to be relieved from the penalties prescribed by the ordinance.

In the *Park Hotel Company Case* it was held that a taxicab is making a legitimate use of a street "while standing at the curb waiting for a fare, which use is subject to such limitations as may be imposed by public authority, and subject to the further limitation that it shall not interfere with the rights of abutting property owners," which the court declares are "(1) the right of access, often referred to as that of ingress and egress; (2) the right to light and air; (3) the right

Long's Bag. Trans. Co. *v.* Burford, 144 Va. 339. 351

Opinion.

of view; (4) the right to have the street kept open and continued as a public street for the benefit of their abutting property, and (5) * * * whatever adds to the value of the street to the abutter."

It appears from the facts in that case that the Park Hotel Company had marked off on the streets in front of its hotel certain spacings as "taxi stand," and "bus-stand," and had agreed with the Yellow Cab and Transfer Company and Paul Kinston that they might park their taxicabs in said areas for longer periods of time than were necessary to receive and discharge passengers and to stand their vehicles there while waiting for business, and had forbidden the defendants from using said areas for either of said purposes, and permitted them to occupy said spaces only as long as necessary to load and unload passengers or baggage. Under these facts the court held further that the hotel company could not, as abutting landowner, confer special privileges in the use of the streets to one as against another who was similarly situated.

The case of *Waldorf-Astoria Hotel Co.* v. *City of New York* involved the validity of a public hack ordinance, "only so far as it attempts to authorize the maintenance of a public hack stand alongside of the curb adjacent to the hotel property occupied by the plaintiff without the plaintiff's consent." The court held that the city could not interfere with the abutting landowner's right of ingress and egress to and from his property, but that inasmuch as the ordinance provided that a space of 230 feet opposite the middle of the entrance to the building must be kept free from standing hacks, it was valid on its face.

We find nothing in these three cases which conflicts very materially with the other authorities we have cited or the views we have expressed herein. So far as they may so conflict we decline to follow them.

352 Long's Bag. Trans. Co. *v.* Burford, 144 Va. 339.

Opinion.

The three cases recognize the right of a city to regulate the use of its streets by taxicabs and like conveyances, and to establish public hack stands in the streets, without violating the rights of abutting property owners. It will be observed in the *Park Hotel Case* that the hotel company undertook, *without the authority of a city ordinance*, to confer special favors on certain cab owners as against others who were their competitors in business. In the instant case the written consent of the abutting owners is required, but is worthless unless the chief of police be of opinion that the public convenience will be best served by assigning the taxi stand at the location agreed upon by the applicant and such owner.

[7, 8] The ordinance in the instant case cannot be said to confer upon an abutting landowner the right to farm out for private profit the use of a public street, since his written consent, standing alone, confers no right or privilege upon the owner or operator of the motor vehicles.

The ordinance makes the public convenience paramount. It is general in its terms and applies to all owners or operators of motor vehicles doing business in the city. The successful applicant must, of course, be one who can bring himself within its terms, and the location of the stand must be such as to serve the public convenience.

Our conclusion is that the city of Lynchburg had full authority to regulate the location of taxi stands on its streets, and that the ordinance is a valid and binding enactment by its council.

[9] (b) Is the petitioner entitled to injunctive relief? This question must be answered in the affirmative.

The assignment of the taxicab stands by the chief of police, under the terms of the ordinance, gave the com-

plainant a valuable property right which a court of equity will protect. The fact that the assignment of the stands may be revoked in no way affects the right of the complainant to have its rights to the space assigned to it protected against the trespasses of its competitors in business while it is in force.

[10] It is true that courts of equity will not restrain an act merely because it is a violation of a criminal statute or of a penal ordinance of a city; yet, where such violation results, as in the instant case, in special damages to property rights, which it would be difficult or impossible to ascertain, equity, in order to prevent a multiplicity of prosecutions, the legal remedy being inadequate, will grant complete relief by injunction.

[11] In *Meredith* v. *Triple Island Club*, 113 Va. 86, 73 S. E. 721, Ann. Cas. 1913E, 531, Keith, P., speaking for the court, quotes with approval from *Whitaker* v. *Stangvick*, 100 Minn. 386, 111 N. W. 295, 10 L. R. A. (N. S.) 921, 117 Am. St. Rep. 703, 10 Ann. Cas. 528 as follows: "It is elementary that equity will grant relief to prevent a threatened trespass, especially where there can be no adequate pecuniary compensation, because it would be difficult or impossible to ascertain the damages resulting from such an act, and where otherwise a multiplicity of suits cannot be prevented, * * * . There has been a material modification in such cases of the requirements that the injury should be irreparable and the legal remedy inadequate. The tendency of American authorities is to extend the application of the remedy, and to grant it in many instances and under many circumstances where it would formerly have been refused."

In fourteen R. C. L., section sixty-six, page 365, we find this: "It may be stated generally that the office

354 Long's Bag. Trans. Co. *v.* Burford, 144 Va. 339.

Opinion.

of an injunction is the protection of property and rights of property. * * * In fact it may be said that interposition by restraining orders is a matter of growth and keeps pace with advancing civilization, and that the courts are continually finding new subjects for such relief; and while it is true that the familiar rule requiring the existence of a property right to justify the granting of this relief is generally adhered to, yet in many instances it seems as if such adherence were only superficial and that there is an endeavor to enlarge and broaden the originally narrower meaning of the term 'property rights' so as to include some right which would formerly have been denied protection by injunction, as being beyond the confines of equity jurisdiction."

For the forgoing reasons the decree complained of will be reversed and set aside and we will enter here such decree as the Corporation Court of the city of Lynchburg should have entered, perpetually enjoining and restraining the defendants, their agents and employees, from occupying with their cabs and vehicles any part of either of said stands assigned to the complainant, except in so far as the defendants may have proper occasion to temporarily stop in said stands for the purpose of receiving and discharging passengers.

*Reversed.*